842 So.2d 363 (2003)
Lorraine G. PALMER
v.
LOUISIANA STATE BOARD OF ELEMENTARY AND SECONDARY EDUCATION.
No. 2002-C-2043.
Supreme Court of Louisiana.
April 9, 2003.
*365 Jeffrey N. Boudreaux, Houma, David K. Nelson, Baton Rouge, Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, for Applicant.
Richard P. Ieyoub, Attorney General, Veronica L. Howard, Baker, for Respondent.
JOHNSON, Justice.
In this wrongful discharge action, plaintiff contests the ruling of the court of appeal, which reversed the trial court's finding that the Board of Elementary and Secondary Education (BESE) failed to comply with the applicable law when it dismissed her from employment without reasons supplied by the Superintendent. We granted the plaintiff's writ to determine the correctness of the court of appeal's decision. Palmer v. Louisiana State Board of Elementary and Secondary Education. 2002-2043 (La.11/8/02), 828 So.2d 1123.

FACTS AND PROCEDURAL HISTORY
Lorraine Palmer was employed by the Special School District # 1(SSD) as a probationary special education teacher at the Jetson Correctional Center for Youth for the 1998-1999 and 1999-2000 school years. Each contract set forth that it was to be effective for that school year only. Ms. Palmer was not new to the teaching profession, but was a "new" teacher with respect to her employment by BESE at Jetson. Prior to her employment at Jetson, Ms. Palmer had eighteen years of teaching experience. Ms. Palmer did not, however, have tenure as a teacher in the SSD.[1]
On June 19, 2000, Mr. Calvin Dees, Principal of Jetson, wrote a letter to Mr. Lester Klotz, the State Director for SSD, recommending that Ms. Palmer's employment not be renewed for the 2000-2001 school year. Ms. Palmer was subsequently notified by letter dated June 20, 2000, that her employment would not be renewed and that her last day of work for SSD would be June 30, 2000.
Mr. Klotz prepared and submitted an executive summary to the Louisiana Board of Elementary and Secondary Education (BESE), which included a recommendation that Ms. Palmer not be offered a contract for the 2000-2001 school year. The record reflects that there were no "valid reasons" accompanying this recommendation. On June 22, 2000, BESE accepted and approved the executive summary presented by SSD.
*366 On July 25, 2000, Ms. Palmer filed suit against BESE asserting that she was a probationary teacher whom BESE could not dismiss or discharge during the probationary period absent a written recommendation of the head of the special school accompanied by valid reasons pursuant to La. R.S. 17:45. She asserted that BESE attempted to circumvent La. R.S. 17:45 by discharging her under the guise of a "non-renewal" of her contract. Ms. Palmer sought a judgment ordering her reinstatement as a probationary teacher at Jetson, together with back wages and all other emoluments of her position.
BESE answered, urging that it was under no legal mandate to offer Ms. Palmer an employment contract for the 2000-2001 school year. It alleged further that the action at issue was the "non-renewal" of a probationary teacher's contract, and not a "dismissal" or "discharge" which had to be accompanied by valid reasons.
Both parties filed motions for summary judgment. The trial judge granted Ms. Palmer's motion on the issue of liability, finding that she was improperly dismissed. The court, however, left open the question of the type of damages to be awarded to Ms. Palmer, granting the parties time to meet and agree upon stipulated relief. BESE appealed from this ruling.
The court of appeal reversed the decision of the trial court, holding that "the non-renewal of a probationary teacher's contract after completion of the school term for which she was hired to teach, prior to the expiration of the three-contract-year probationary term, does not fall within the purview of La. R.S. 17:45." Palmer v. Louisiana State Bd. of Elementary and Secondary Education, 822 So.2d 90, at 93 (2002). The court of appeal further found that Ms. Palmer's argument attempts to destroy one of the crucial distinctions between tenured and non-tenured status.

DISCUSSION
The sole issue before this court is whether BESE violated La. R.S. 17:45 when it decided not to offer Ms. Palmer a contract for a third year during the probationary period without receiving valid reasons from the school superintendent accompanying the written recommendation not to renew her contract. La. R.S. 17:45 provides, in pertinent part, as follows:
Each teacher shall serve a probationary term of three contract years to be computed from the date of his first appointment in the special school in which the teacher is serving his probation. During the probationary term, the board may dismiss or discharge any probationary teacher upon the written recommendation of the superintendent or other head or director of the special school accompanied by valid reasons therefor.
Any teacher found unsatisfactory by the board, at the expiration of the probationary term, shall be notified in writing by the board that he has been discharged or dismissed; in the absence of such notification, such probationary teacher shall automatically become a regular and permanent teacher in the employ of the special school where he has successfully served his three year probationary term; all teachers in the employ of a special school as of September 1, 1979, who hold proper certificates and who have served satisfactorily as teachers in the special school where employed for more than three consecutive years, are declared to be regular and permanent teachers in the employ of the special school. (Emphasis added)
Ms. Palmer interprets this statute to require that a "new" or "probationary" teacher serve a probationary period of *367 three consecutive years. Under this interpretation, the employment continues during the three year probationary period unless and until the employing authority recommends dismissal in writing accompanied by valid reasons. Thus, Ms. Palmer asserts that she was a probationary teacher at the time she was terminated and, therefore, she was entitled to continued employment during the three-year probationary period absent BESE's compliance with the termination procedures set forth in La. R.S. 17:45.
BESE asserts that it was not the legislature's intent to give probationary teachers a right to continued employment. Instead the legislature's use of the words "three contract years" denotes that a probationary teacher shall serve three separate one year probationary contracts. BESE argues that Ms. Palmer's "probationary term" ran concurrent with each school year. At the end of each contract year, BESE contends that it had the right of "non-renewal" of her contract, which is not the same as "dismissal" or "discharge" under La. R.S. 17:45. Thus, according to BESE, because Ms. Palmer was not discharged during one of the two contract probationary years that she served, La. R.S. 17:45 does not apply and valid reasons are not required. The court of appeal agreed with BESE's interpretation. For the reasons that follow, we reverse the court of appeal's interpretation of La. R.S. 17:45.
Principles of judicial interpretation of statutes are designed to ascertain and enforce the intent of the legislature in enacting the statute. SWAT 24 Shreveport Bossier, Inc. v. Bond, XXXX-XXXX (La.6/29/01), 808 So.2d 294 Citing Stogner v. Stogner, 98-3044, p. 5 (La.7/7/99), 739 So.2d 762, 766; State v. Piazza, 596 So.2d 817, 819 (La.1992). The fundamental question in all cases of statutory construction is legislative intent and the reasons that prompted the legislature to enact the law. Succession of Boyter, 99-0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1128. When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written, with no further inquiry made in search of the legislative intent. La. C.C. art. 9; La. R.S. 1:4. However, when a law is susceptible of different meanings, "it must be interpreted as having the meaning that best conforms to the purpose of the law." La. C.C. art. 10.
The meaning and intent of a law is determined by considering the law in its entirety and all other laws concerning the same subject matter and construing the provision in a manner that is consistent with the express terms of the statute and with the obvious intent of the lawmaker in enacting it. Bond, supra at 302; Boyter, supra at 1129; Stogner, supra at 766. The statute must therefore be applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the legislature had in enacting it. Boyter, 756 at 1129. Courts should give effect to all parts of a statute and should not adopt a statutory construction that makes any part superfluous or meaningless, if that result can be avoided. Langlois v. East Baton Rouge Parish Sch. Bd., 99-2007 (La.5/16/00), 761 So.2d 504, 507; Boyter, 756 at 1129. Furthermore, "the object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result." First Nat'l Bank of Boston v. Beckwith Mach. Co., 94-2065, p. 8 (La.2/20/95), 650 So.2d 1148, 1153 (quoting Smith v. Flournoy, 238 La. 432, 115 So.2d 809, 814 (1959)).
*368 The starting point for the interpretation of any statute is the language of the statute itself. Cat's Meow, Inc. v. City of New Orleans, 98-0601, p. 15 (La.10/20/98), 720 So.2d 1186, 1198; Touchard v. Williams, 617 So.2d 885 (La.1993). The pertinent language of La. R.S. 17:45 at issue reads,
[e]ach teacher shall serve a probationary term of three contract years to be computed from the date of his first appointment. During the probationary term, the board may dismiss or discharge... upon the written recommendation... accompanied by valid reasons... (Emphasis added).
BESE argues that it is only required to adhere to the procedural requirements of providing valid reasons with its recommendation when it dismisses a probationary teacher in the middle of a school year. We find that this interpretation does not conform with the language of the statute. The statute does not provide that the procedural requirements must be met only when a teacher is dismissed "during a contract year." Instead, it states that the requirements must be met when a teacher is dismissed "during the probationary period," i.e. "during the period of three contract years." Thus, we find that any time during the probationary period, even at the conclusion of a "school year," BESE is required by statute to give valid reasons along with its recommendation of a probationary teacher's dismissal or discharge. This interpretation is strengthened by the statute's directive that the three year probationary period is "to be computed from the date of [the teachers'] first appointment" or first contract year, and would not begin anew with the renewal of each contract.
We also reject BESE's argument that a "non-renewal" of a teacher's one year contract during the probationary period does not constitute a "dismissal" or discharge "within the meaning of La. R.S. 17:45 and the statute is, therefore, inapplicable in this case. According to BESE, it did not "dismiss" or discharge" Ms. Palmer, but simply decided not to renew her teaching contract. La. R.S. 17:45 does not distinguish between terminating a teacher in the middle of the school year and not renewing a teacher's contract at the end of the school year. Further, our jurisprudence has recognized that a "discharge" or dismissal "as used in La. R.S. 17:45 and La. R.S. 17:442[2] includes the decision to not renew a probationary teacher's contract during the probationary term. See Noel v. Andrus, 810 F.2d 1388, 37 Ed. Law Rep. 494 (5th Cir.1987), which, applying Louisiana law, held that a school board's decision not to renew the employment of a non-tenured probationary teacher must be based upon the written recommendation of the parish or city superintendent of schools, as the case may be, accompanied by valid reasons" Id., 810 at 1392. See also McKenzie, supra and Nobles, supra.
Even the Attorney General has rejected the proffered distinction between dismissal and non-renewal offered by BESE. In an Opinion Letter dated October 20, 1939, the Attorney General opined that a "non-renewal" is the equivalent to a discharge *369 under Act 58 of 1936 (now La. R.S. 17:442). The opinion stated:
Under the provisions of Act 58 of 1936, which amended and reenacted Section 48 of Act 100 of 1922, each teacher is required to serve a probationary term of three years; such probationary term to be reckoned from the date of his first appointment in the parish in which the teacher is serving his probation. The act contains the further provision, "during said probationary term the parish school board may dismiss or discharge any probationary teacher upon the written recommendation, accompanied by the valid reasons therefor, of the superintendent of schools of that parish."
In view of the statement in your letter that the teacher in question was simply not reemployed and was not given reasons for, or notice of non-reemployment, it would appear the provisions of Act 58 of 1936 were not complied with by the parish school board and, in our opinion, the teacher has not been discharged in accordance with law. (Emphasis added)
Our interpretation of La. R.S. 17:45 conforms with the legislative intent in drafting the statute. The Louisiana Teachers Tenure Law is designed to protect and insulate all teachers from political reprisal. Smith v. Ouachita Parish School Board, 29-873 (La.App. 2 Cir. 9/24/97), 702 So.2d 727, writ denied, 97-2721 (La.1/16/98), 706 So.2d 978. The provisions of the Teachers Tenure Law must be liberally construed in favor of teachers, since teachers are its intended beneficiaries. Rousselle v. Plaquemines Parish School Bd., 93-1916 (La.2/28/94), 633 So.2d 1235.
In 1979, the legislature enacted La. R.S. 17:45 for the purpose of providing some level of protection to teachers who had not acquired tenure status in the special school system. Non-tenured teachers in the public elementary and secondary school systems already had benefit of this protection by virtue of article 17:442. La. R.S. 17:45 is the parallel provision to La. R.S. 17:442. In fact, La. R.S. 14:43 expressly states:
It is declared to be legislative policy that the special schools ... shall provide all benefits, privileges, rights, and powers as provided for certificated teachers in the public elementary and secondary schools in the interest of statewide uniformity of administration of teacher welfare benefits, including but not limited to the benefits enumerated in this Part.
According to La. R.S. 17:43, the scope and applicability of La. R.S. 17:45 is coextensive with the scope and applicability of La. R.S. 17:442. The tenure statutes governing teachers in special schools, La. R.S. 17:45, et seq. provide the same rights and privileges afforded regular school teachers under R.S. 17:442, et seq. There is no statutory or jurisprudential distinction as to the purpose or intent behind tenure laws affecting special school teachers versus regular school teachers.
Further, a review of the legislative comments surrounding the enactment of La. R.S. 17:45 (House Bill 317) reveals the legislature's intent that teachers in special schools are to be given the same benefits, privileges, rights and protection as teachers in other public schools under La. R.S. 17:442. Speaking in support of the Bill was Dr. Bill Baker of the Louisiana Association of Educators. Dr. Baker stated "these teachers should be put in the law just as the elementary and secondary teachers are. These teachers want the same protection as the elementary and secondary teachers." Representative Forest Dunn stated that "these teachers were protected but with the bill it would be put in the law."
*370 In State ex rel. Nobles v. Bienville Parish School Board, 198 La. 688, 4 So.2d 649 (1941), we discussed a teacher's probationary term and the requirements for dismissal during that term under then article 17:442[3], which applies to public school teachers.
As in the instant case, the plaintiff in Nobles had been hired for two school years, 1938-39 and 1939-40. In each instance, the contract was issued to the plaintiff for that particular school year only. The plaintiff was notified that his employment as principal of the high school would not be renewed. There was no written recommendation for the dismissal of the plaintiff by the Superintendent accompanied by valid reasons therefor to the School Board. The plaintiff filed suit to compel the school board for reinstatement. The trial court rendered judgment in favor of plaintiff, ordering his reinstatement. We affirmed that decision, holding:
The fact that the school board employed the plaintiff by the year or for a period of a year is of no moment. To conclude otherwise would defeat the purpose of the Teachers' Tenure Act. In other words, it would permit school boards to fix a probationary term in derogation of the expressed provisions in the Act. The Act expressly provides that the probationary term of three years begins from the date of the first appointment or employment of the teacher irrespective of whether the contact of employment is for one year or more.
* * *
The statute fixes the probationary term at three years beginning from the date of the first appointment of the teacher. There is no provision for the employment of a probationary teacher for a different period of time. This in our opinion clearly shows that the act contemplates that the employment should cover a period of three years. The period of employment being fixed by statute the school board is without authority to change it by contract or otherwise. To hold that school boards could escape the provisions of the act by employing probationary teachers for a shorter period of time would render the provisions of the Act with reference to probationary teachers meaningless and permit the dismissal of probationary teachers without cause in derogation of the provisions of the Act. (Emphasis added)
The rights of probationary teachers under La. R.S. 17:442 were also explained in McKenzie v. Webster Parish School Board, 609 So.2d 1028 (La.App. 2 Cir. 1992). There, a probationary teacher's contract was not renewed. The court explained:
Probationary teachers do not have a constitutionally protected liberty or property interest in the renewal of their teaching contracts which entitle them to procedural due process and their discharge does not involve substantive due process. Thus, a teacher who does not enjoy tenure in his position may be discharged by the school board without notice or a hearing so long as valid reasons for his discharge have been expressed in writing by the superintendent. (Emphasis added)
Thus, the McKenzie court recognized that, although a probationary teacher is not entitled to a constitutionally protected interest *371 in the renewal of their contracts, BESE must be provided a recommendation with valid reasons before the decision is made not to renew a probationary teacher's contract during the probationary term.
Based on the above jurisprudence, we find the law to be clear that under La. R.S. 17:45, the probationary term for special school teachers is three years. The dismissal of a teacher during the probationary period requires the Superintendent to provide a recommendation with valid reasons to BESE for the teacher's dismissal. We find no statutory or jurisprudential precedent to the effect that teachers in a special school system should receive less protection than those in other public elementary and secondary schools. As explained above, the very purpose of enacting La. R.S. 17:45 was to extend the rights and privileges recognized in La. R.S. 17:442 to teachers in special schools.
Lastly, we find no merit in BESE's argument that La. R.S. 17:442 and La. R.S. 17:45 are to be distinguished because 17:442 states that the probationary term is "three years" while 17:45 states that the probationary term is "three contract years." A review of the legislative history of section 17:45 reveals that the word "contract" was added after discussion of the purpose of the House Bill, and as part of "technical amendments." There was no indication from the legislative comments that the addition of the word "contract" should have any effect on the substantive meaning or purpose behind the enactment. In any event, we do not find it logical to infer a distinction between the meaning and purpose of La. R.S. 17:442 and La. R.S. 17:45 because of this technical amendment, when the legislative history and jurisprudence dictate that there should be no distinction.

Damages
Because we have concluded that Ms. Palmer was illegally discharged from her employment, our next inquiry is what relief should be granted. Ms. Palmer argues she is entitled to damages in the form of lost salary, plus all emoluments that she would have received had she not been illegally terminated. BESE argues that even if Ms. Palmer was illegally discharged, these damages should not be awarded to Ms. Palmer because the mandate or duty to receive valid reasons is owed to BESE, not to Ms. Palmer. Thus, according to BESE, it should be allowed to waive a duty owed to it, without being penalized.
To accept BESE's argument would give BESE the unfettered right to disregard the mandates of La. R.S. 17:442 and La. R.S. 17:45, as the case may be, without worry of any penalty for their actions. Essentially, BESE would like this Court to declare its violation of the statute as "harmless error." We decline to do so. The Teacher Tenure Law is not designed to protect BESE, it is designed to protect teachers.
In considering damages for the school board's violation of La. R.S. 17:442 in the Nobles case, we found that the plaintiff was entitled to a judgment reinstating him to his original status as principal of the high school from which he had been discharged. We further found, "to award the plaintiff with the amount of the salary without reinstating him to the status from which he had been illegally dismissed would not give the relief that plaintiff is entitled to." Nobles at 4-651. Also, in Booker v. Richland Parish School Bd., 393 So.2d 785 (La.App. 2 Cir.1981), the court awarded reinstatment and back pay from the date of the termination together with legal interest from the date of judicial demand until paid after finding that the *372 school board failed to comply with La.R.S. 17:45.
We, therefore, remand this matter to the trial court for a determination of whether Ms. Palmer is entitled to damages, and an award of damages if the trial court determines that damages are due.

DECREE
We hereby reverse the decision of the court of appeal and reinstate the decision of the trial court.
REVERSED AND REMANDED.
TRAYLOR and VICTORY, JJ., dissent.
TRAYLOR, Justice, dissenting.
I dissent from the majority's conclusion that Ms. Palmer was illegally discharged from her employment. Pursuant to La. R.S. 17:45,[1] each teacher, before being eligible for tenure, must serve a probationary term of three contract years. The successful completion of the probationary term of three years merely earmarks a teacher's status of tenure. In the instant case, Ms. Palmer successfully completed two of those three probationary contract years. Because she was not dismissed or discharged during one of those two contract probationary years that she served, La. R.S. 17:85 does not apply and written reasons are not required. Rather, BESE merely elected not to renew her contract for a third probationary year. The non-renewal of a probationary teacher's contract after completion of the school term for which she was hired to teach, prior to the expiration of the three year probationary term does not fall within the purview of La. R.S. 17:45.
Additionally, I would note that the second paragraph of La. R.S. 17:45, which discusses what occurs after the expiration of the probationary term when a teacher is found unsatisfactory, does not require written reasons, only that the teacher be notified in writing that he has been discharged or dismissed. The statute must be applied and interpreted in a manner which is consistent with logic and the presumed fair purpose and intention of the legislature in passing it. In the instant case, it would only seem consistent and logical that valid reasons would not have to accompany a non-renewal of a subsequent contract year when valid reasons are not required at the expiration of the probationary term. Accordingly, I would affirmed the court of appeal's ruling, reversing the trial court's judgment and dismissing the lawsuit.
NOTES
[1] It is undisputed that Ms. Palmer was, at all relevant times, a "teacher" as the term is defined under the Teachers Tenure Law.
[2] La. R.S. 17:442 applies to probation and tenure of parish or city school teachers. It provides, in pertinent part:

Each teacher shall serve a probationary term of three years to be reckoned from the date of his first appointment int he parish or city in which the teacher is serving his probation. During the probationary term the parish or city school board, as the case may be, may dismiss or discharge any probationary teacher upon the written recommendation of the parish or city superintendent of schools, as the case may be, accompanied by valid reasons therefor.
[3] At the time of the Nobles decision, the relevant provision was Act 58 of 1936, which is now the current La. R.S. 17:442.
[1] La. R.S. 17:45 provides, in pertinent part:

Each teacher shall serve a probationary term of three contract years to be computed from the date of his first appointment in the special school in which the teacher is serving his probation. During the probationary term, the board may dismiss or discharge any probationary teacher upon the written recommendation of the superintendent or other head or director of the special school accompanied by valid reasons therefor.
Any teacher found unsatisfactory by the board, at the expiration of the probationary term, shall be notified in writing by the board that he has been discharged or dismissed; in the absence of such notification, such probationary teacher shall automatically become a regular and permanent teacher in the employ of the special school where he has successfully served his three year probationary term; all teachers in the employ of a special school as of September 1, 1979, who hold proper certificates and who have served satisfactorily as teachers in the special school where employed for more than three consecutive years, are declared to be regular and permanent teachers in the employ of the special school.