Dear Mr. Picard:
You requested an opinion of this office concerning the interpretation of LSA-R.S. 17:421.6, which provides for an annual salary supplement to certain full-time teachers, who hold a certificate issued by the National Board for Professional Teaching Standards. Specifically, you ask for guidance concerning the applicability of LSA-R.S. 17:421.6 to a number of positions, including librarians, distinguished educators, guidance counselors, class size reduction teachers, master teachers and resource or itinerant teachers. Attached to your opinion request was the Employment Verification Form the Louisiana Department of Education requires Superintendents of local education agencies to complete for each National Board Certified Teacher (NBCT) in his or her parish. The form outlines the requirements of LSA-R.S.17:421.6 and asks the Superintendents to verify that the NBCT is a full-time teacher and that he or she meets the requirements of LSA-R.S. 17:421.6.
LSA-R.S. 17:421.6 provides:
 A.(1) Effective for the 1999-2000 school year and thereafter, a full-time teacher who holds both a valid Louisiana regular teaching certificate approved by the State Board of Elementary and Secondary Education and a valid certificate issued by the National Board for Professional Teaching Standards and who is employed by a school board to provide instruction to students shall receive from the school board, in addition to his annual salary as provided by law and school board policy, an annual amount of not less than five thousand dollars with such additional amount to be distributed in the same manner as the annual salary. For any teacher awarded the certificate issued by the National Board for Professional Teaching Standards during the 1999-2000 school year or thereafter, such additional amount shall be paid to the teacher beginning in the school year immediately following the school year in which the teacher is awarded the certificate.
 (2) Effective for the 2001-2002 school year and thereafter, a school administrator who holds both a valid Louisiana regular teaching certificate approved by the State Board of Elementary and Secondary Education and a valid certificate issued by the National Board for Professional Teaching Standards which was earned while teaching and who is employed by a school board shall receive the same salary adjustment as provided for teachers in Paragraph (1) of this Subsection.
 B. Subject to the appropriation of funds for this purpose, the amount of the salary adjustment provided by a school board to a teacher or school administrator pursuant to the provisions of this Section shall be reimbursed to the school board annually by the state Department of Education. However, no such reimbursement shall exceed five thousand dollars per year per teacher or school administrator, including retirement benefits.
 C. In addition to any other requirements of this Section, to receive the salary adjustment provided by this Section an otherwise eligible person shall have been awarded the initial certificate issued by the National Board for Professional Teaching Standards prior to July 1, 2007.
 D. For the purposes of this Section, school board shall mean the governing authority of any public elementary or secondary school.
In order to be eligible to receive the supplement provided for in LSA-R.S. 17:421.6, an individual must: 1. be a full-time teacher employed to provide instruction to students; 2. hold a valid Louisiana regular teaching certificate; 3. hold a valid certificate issued by the National Board of Professional Teaching Standards, which was initially issued prior to July 1, 2007; and 4. be employed by a school board. Beginning in the 2001-2002 school year, LSA-R.S. 17:421.6(A)(2) permits school administrators employed by a school board to receive the supplement if the National Board for Professional Teaching Standards certificate was earned while teaching.
Although most of the above listed requirements for eligibility can be verified or attested to, the term "teacher" has not been defined for the purposes of LSA-R.S. 17:421.6. The term "teacher" has the potential to be defined in a limited sense to include only classroom teachers or in an expansive sense to include every individual whose job requires him or her to hold a Louisiana teaching certificate. As a result, to determine the scope of the application of LSA-R.S. 17:421.6, we find it necessary to apply the rules of statutory construction and examine the legislative intent behind the enactment of this statutory provision.
The basic tenets of statutory construction are found in Louisiana Civil Code Articles 9—12 and Title 1, Sections 3-4 of the Louisiana Revised Statutes. They provide as follows:
Art. 9 Clear and unambiguous law
 When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
 Art. 10 Language susceptible of different meanings
 When the language in the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.
 Art. 11 Meaning of Words
 The words of a law must be given their generally prevailing meaning.
 Words of art and technical terms must be given their technical meaning when the law involves a technical matter.
 Art. 12. Ambiguous words
 When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.
 § 3. Words and phrases; how construed
 Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.
 The word "shall" is mandatory and the word "may" permissive.
 § 4. Unambiguous wording not to be disregarded
 When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.
Our jurisprudence has been historically consistent in applying these rules. The following represent selected quotations from cases we believe are relevant to the issue before us:
David v. Our Lady of the Lake, Inc., 02-2675 (La. 7/2/03), 849 So.2d 38:
 Nothing is better settled than that in the construction of a law its meaning must first be sought in the language employed. [citing United States v. Standard Brewery, Inc., 251 U.S. 210, 217, 40 S.Ct. 139, 140, 64 L.Ed. 229
(1920)]
* * *
 Thus, interpretation of any statute begins with the language of the statute itself. (citing SWAT 24 Shreveport Bossier, Inc. v. Bond, 2000-1695, p. 12 (La. 6/29/01), 808 So.2d 294, 302.)
* * *
 The proper connotation to be placed on a word in a statute does not depend on an isolated definition attributable to it; instead, the word and the context in which it is used shall be considered. [citing Liter v. City of Baton Rouge, 258 La. 175, 190, 245 So.2d 398, 403 (1971)]
Palmer v. Louisiana State Board of Elementary and Secondary Education, 02-2043 (La. 4/9/03), 842 So.2d 363:
 When a law is clear and unambiguious and its application does not lead to absurd consequences, it shall be applied as written, with no further inquiry made in search of the legislative intent. La.C.C. art. 9; La.R.S. 1:4. However, when a law is susceptible of different meanings, `it must be interpreted as having the meaning that best conforms to the purpose of the law.' La.C.C. art. 10.
Succession of Boyter, 99-0761 (La. 1/7/00), 756 So.2d 1122:
 The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the legislature to enact the law (citing Fontenot v. Chevron U.S.A., Inc., 95-1425 (La. 7/2/96), 676 So.2d 557.) The rules of statutory construction are designed to ascertain and enforce the intent of the legislature." [citing Stogner v. Stogner, 98-3044 (La. 7/7/99), 739 So.2d 762; State v. Piazza, 596 So.2d 817 (La. 1992).]
* * *
 The statute must therefore be applied and interpreted in a manner which is consistent with logic and the presumed fair purpose and intention of the legislature in passing it. [citing Rodriguez v. Louisiana Med. Mut. Ins. Co., 618 So.2d 390 (La. 1993)] This is because the rules of statutory construction require that the general intent and purpose of the legislature in enacting the law must, if possible, be given effect. (citing Radiofone, Inc. v. City of New Orleans, 93-0962 (La. 1/14/94), 630 So.2d 694; Backhus v. Transit Cas. Co., 549 So.2d 283 (La. 1989); Truscon Steel Co. v. B. T. Const. Co., 170 La. 1083, 129 So. 644 (1930).
In Succession of Boyter, the Louisiana Supreme Court was required to interpret the scope of the application of a statute. In addressing its interpretation of the scope of the application, the court stated, ". . . we must not only analyze the language of the statute, but must also ascertain the legislative intent with respect to its applicability." [citing Sanders v. Department of Health Human Resources,388 So.2d 768 (La. 1980)]
We begin our interpretation of LSA-R.S. 17:421.6 with the language employed therein, which requires that an individual be a "full-time teacher." Applying the principals set forth in LSA-R.S. 1:3 and Civil Code Articles 11 and 12, we examine the generally prevailing meaning and the common and approved usage of the term "teacher" and the context in which it appears. The term "teacher" is defined in The American HeritageDictionary of the English Language, Fourth Edition, Copyright 2000 by Houghton Mifflin Company, as "one who teaches, especially one hired to teach." Webster's Revised Unabridged Dictionary, Copyright 1996, 1998 MICRA, Inc. defines the term "teacher" as "one who teaches or instructs; one whose business or occupation is to instruct others." Generally speaking, in the elementary and secondary school context, the term teacher is associated with an individual who is assigned to a classroom to teach students on a daily basis. The context within which the term "full-time teacher" appears in LSA-R.S. 17:421.6 provides a modification of the term, requiring that the "full-time teacher" be ". . . employed . . . to provide instruction to students . . ." It is important to note that the term "full-time teacher" is not modified in any other way.
As stated by the Supreme Court in Boyter, in addition to analyzing the language of the statute, the legislative intent with respect to its applicability must also be ascertained. To do that, we must examine the National Board Certification system and its purpose. The National Board for Professional Teaching Standards issues National Board Certificates to teachers who complete an extensive evaluation process. The process includes a series of performance-based assessments. Teachers applying for certification submit a teaching portfolio, which is completed in the classroom and includes student work samples, videotapes and other teaching artifacts. Teachers are required to provide in-depth explanations and analysis of their teaching, including how it relates to student work and performance. The teachers' classroom teaching and student learning are evaluated. The teachers must also complete a series of written exercises that test their knowledge of the subject matter they are teaching and their understanding of how to teach those subjects to their students. Teachers must meet a certain performance standard measured in points awarded in the assessment process to receive a National Board Certificate.
National Board Certification is a system of advanced certification for teachers and is a symbol of teaching excellence. Teachers holding a National Board Certificate possess and have exhibited superior teaching skills. The focus of National Board Certification is on recognizing excellence in the teaching of students. In addition to a generalist certificate, National Board Certificates are available for a number of standard subjects, including art, career and technical education, English as a new language, English language arts, exceptional needs, library media, math, music, physical education, school counseling, science, social studies-history and world languages.
With the recognition of what National Board Certification represents, the supplement provided for in LSA-R.S. 17:421.6 provides both a reward for those teachers who possess a National Board Certificate and an incentive for teachers to strive to achieve National Board Certification and the distinction that the certificate embodies. It is ultimately an effort to have and retain individuals with excellent teaching skills teaching students in public schools throughout the state. Because the focus of National Board Certification is on teaching excellence, it must be presumed that the intended scope of application of LSA-R.S. 17:421.6
was to individuals who regularly work in a classroom setting instructing students. As previously stated, the legislature provided no modification as to the type of full-time teacher, except that the individual be employed to provide instruction to students.
LSA-R.S. 17:421.6 was amended in 2001 to provide an exception to the requirement that an individual be a full-time teacher employed to provide instruction to students. LSA-R.S. 17:421.6(A)(2) was added to allow school administrators who earned their National Board Certificate while teaching to retain their supplement. This amendment further supports the finding that the intent of the original enactment was to provide the supplement to individuals who regularly instruct students. The amendment was necessary to allow school administrators to continue to receive the supplement, even though they would no longer be providing instruction to students.
After applying the principles of statutory construction and examining the legislative intent, it is the opinion of this office that to be considered a "full-time teacher" for the purposes of LSA-R.S. 17:421.6, an individual must be employed on a full-time basis to teach or instruct students. It is our opinion that the legislature did not intend the term "full-time teacher" to be confined to only full-time "classroom" teachers, nor did it intend to include everyone with a teaching certificate. We believe that the legislature intended individuals who regularly provide instruction to students, whether in a traditional classroom or in an alternate classroom setting, to be eligible to receive the supplement. It is our opinion that the legislature's goal was to have teachers who symbolize excellence instructing students. The designation by school boards of each individual's employment status as full-time or part-time for the purposes of LSA-R.S. 17:421.6 should be consistent with designations made for all other compensation purposes.
In determining if an individual is employed to provide instruction to students, focus should be placed on the description of the job the individual has been employed to perform and the actual duties the individual performs on a daily basis. For example, an individual whose job title is "classroom teacher" has within his or her job description the instruction of students; however, he or she must also, in practice, regularly instruct students to be eligible for the supplement. An individual's job title alone does not make him or her eligible for the supplement, if, in practice, he or she does not instruct students on a regular basis. At the same time, although an individual's job title may not contain the word "teacher," his or her job description may include the instruction of students and, in practice, that individual may provide instruction to students on a regular basis.
We will now address each position independently and determine, where possible, which positions are eligible and which positions are not eligible to receive the supplement. The requirements that an individual hold a Louisiana regular teaching certificate and a certificate issued by the National Board for Professional Teaching Standards have been previously stated and do not require discussion. In addition, unless indicated, the requirement that an individual be employed by a school board will not be discussed. These are requirements that are easily verified by and/or can be attested to by an employing school board or superintendent.
Librarians
The Louisiana Department of Education has produced Guidelines forLibrary Media Programs. State standards for library media programs were previously published as Bulletin 1134 of the Board of Elementary and Secondary Education. Guidelines for Library Media Programs serve as guidance to local education agencies in the development of school library media programs. The guidelines address learning environment, information access, program administration and facilities. Included among the many responsibilities the guidelines assign to the librarians or library media specialists is the instruction of students. These instructional responsibilities include: providing instruction in the use of print, non-print, and electronic resources, including literacy strategies to increase comprehension; presenting library lessons incorporating various genres of literature and authors and including creative follow up activities; and teaching lessons on search strategies, note taking, outlining, use of software programs or databases. The guidelines also promote collaborative planning and collaborative teaching by the library media specialist and classroom teachers and integration of information literacy and technology instruction into the curriculum.
Generally, the job description of librarians outlined in Guidelines forLibrary Media Programs includes the instruction of students. Each local education agency may have a job description for its librarians. In fact, the instructional component of librarians' jobs may vary from parish to parish, school to school or year to year. It may also vary based on the grade levels serviced by the librarian. In essence, holding the position of librarian does not necessarily make an individual eligible for a supplement. The essential determination that must be made is whether, in practice, the librarian applying for the supplement instructs students on a regular basis. This is a determination that must be made by the local officials who employ the librarian. Each librarian's principal and the superintendent of the school system must evaluate the instructional component of the librarian's position, including the duties that the librarian in question performs on a daily basis. The determination as to whether each librarian_applying for the supplement instructs students on a regular basis should be based on these individual evaluations.
The Louisiana Department of Education currently requires that an employment verification form be completed for each individual seeking a supplement. On the verification form, the superintendent of the individual's school system is required to affix his or her signature, verifying that the individual is eligible to receive the supplement, pursuant to the requirements outlined in LSA-R.S. 17:421.6. We recommend the continued use of an annual verification form, but suggest that the findings in this opinion be incorporated into the form. We also suggest that both the librarian's principal and superintendent be required to sign the verification. Both officials should not only verify that the requirements of LSA-R.S. 17:421.6, as outlined in this opinion, have been met, but also that the determination that the individual instructs students on a regular basis was based on an evaluation of the duties performed on a daily basis by the individual in question. In doing so, the school system superintendent is furthering his or her responsibility to ". . . faithfully carry out the requirements of the state school laws. . ." and, as treasurer of school funds, is verifying that funds allocated to his or her school system by the state will be disbursed to qualifying recipients, as required by law. LSA-R.S. 17:91; LSA-R.S. 17:95; LSA-R.S. 17:123.
If a librarian's principal and superintendent verify the librarian's eligibility for a supplement on an employment verification form, as outlined above, the librarian_is eligible to receive a supplement, pursuant to LSA-R.S. 17:421.6.
Distinguished Educators
The Distinguished Educator Program is created in LSA-R.S. 17:10.4. It was established as part of the school and district accountability program and provides for the assignment of individuals qualified in both education and experience to provide assistance in schools determined to be in need of corrective action. LSA-R.S. 17:10.4(C) provides that distinguished educators ". . . shall be hired within a project position in the department for the term of his service as a distinguished educator." One of the requirements in LSA-R.S. 17:421.6, as has been previously stated, is that the individuals receiving the supplement be employed by a school board. LSA-R.S. 17:421.6 defines school board as the governing authority of any public elementary or secondary school. While the State Board of Elementary and Secondary Education is the governing authority of special schools under its jurisdiction, pursuant to La. Const Art. VIII § 3, the Department of Education is not a governing authority of any public elementary or secondary schools. (See generally, LSA-R.S. 17:21, 17:22, 17:24 and 17:81). As employees of the Department of Education, distinguished educators are not employees of a school board and are therefore not eligible to receive a supplement under LSA-R.S. 421.6. No further analysis, including the job duties performed by distinguished educators, is necessary.
Guidance Counselors
LSA-R.S. 17:3002(B) defines a guidance counselor as "a member of the school faculty who by training and background, is qualified to engage in educational and vocational guidance. The purpose of a guidance counselor is to help students to arrive at their full potential through a process involving direct contact between the counselor and a student, parents, teachers, school administrators and/or others." LSA-R.S. 17:3002(B). LSA-R.S. 17:3002(D) provides:
 D.(1) The "practice of school guidance counseling" means the rendering, offering to render, or supervising those who render to individuals or groups of pupils within the elementary, secondary, and postsecondary schools, services involving the application of counseling procedures for learning how to solve problems and make decisions.
(2) In the practice of counseling:
 (a) The counselor serves as an advocate for children within the adult structure of the school and community and has as his or her prime responsibility, services to and for the pupil, and
 (b) The counselor does not include among his or her responsibilities the administration of disciplinary action, substitute teaching, or administrative clerical duties.
 (3) A guidance counselor shall devote not less than two-thirds of each academic school year to the practice of school guidance counseling.
LSA-R.S. 17:3005 sets forth the requirements for elementary school guidance counselors as follows:
* * *
 C. Such guidance counselors shall provide preventive and developmental guidance services to all public elementary school students in kindergarten through grade six in order to prepare them for middle, junior, and senior high school responsibilities and their social and physical development. In providing such guidance services, the counselors may:
 (1) Aid children in academic development through the use and interpretation of test scores, improved pupil self-concept, and early identification and attention to problems that are deterrents to learning and development.
 (2) Serve as consultants to teachers relative to the use of test scores and improvement of the learning environment, use of out-of-state school resources and agencies, and development of a home-school liaison.
 (3) Offer services related to the identification and placement of children with handicapping conditions.
 (4) Serve as a consultant to parents, in a liaison capacity, as a resource in understanding growth and development problems, and as an aid in understanding how some nonschool factors affect learning and achievement of children.
 (5) Serve as a resource in decreasing discipline and other at-risk behavioral problems through an understanding of peer relations, teacher-pupil relations, social awareness, drug awareness, and others.
 (6) Aid in improving school attendance and retention by implementing an early identification and prevention program for potential attendance and retention problems.
 (7) Serve as a resource to parents in decreasing the incidence of juvenile delinquency by early intervention through guidance and counseling services.
 (8) Consult with teachers in implementing a career development program which, at the elementary school level, includes self-awareness, job awareness, and prevocational orientation.
 (9) Provide an available source for youngsters needing someone to "just listen" to their problems or concerns.
 D. Guidance counselors shall spend the majority of their time on providing direct counseling related to students.
The job description and duties of guidance counselors established by the above referenced statutes include providing educational, vocational, preventative and developmental guidance services to students. This includes the counseling of students, often involving parents and teachers, in a variety of areas including problem solving, decision making, academic performance, discipline, attendance and career development. The instruction of students is not included as a duty of the guidance counselor. LSA-R.S. 17:3002(D)(2)(b) specifically states that substitute teaching is not among the responsibilities of a guidance counselor. In addition, LSA-R.S 17:3002(D)(3) requires that "[a] guidance counselor shall devote not less than two-thirds of each academic year to the practice of school guidance counseling." Based on the general job duties of guidance counselors and the statutory mandate that at least two-thirds of a counselor's time during the academic year be spent performing those duties, it is the opinion of this office that, if employed as a guidance counselor, an individual is not eligible for the supplement provided in LSA-R.S. 17:421.6.
In addition, the legislature has acknowledged the distinction between teachers eligible to receive a supplement pursuant to LSA-R.S. 17:421.6
and guidance counselors in its enactment of LSA-R.S. 17:421.8. LSA-R.S.17:421.8 provides for a salary supplement to school counselors employed by a school board to provide services to students, who possess a National Certified School Counselor credential issued by the National Board for Certified Counselors. Guidance Counselors are eligible to receive a supplement if they meet the requirements of that provision.
We also note that beginning in the fall of 2003, the National Board for Professional Teaching Standards is offering a National Board Certificate in the area of school counseling. If a guidance counselor receives a National Board Certificate with a school counseling concentration from the National Board for Professional Teaching Standards, he or she has met the requirement in LSA-R.S. 17:421.6 of having ". . . a valid certificate issued by the National Board for Professional Teaching Standards. . ." The legislature, in the original enactment of LSA-R.S. 17:421.6 or by amendment thereafter, has not limited the applicability of the provision to certificates with specific concentrations. All that is required is a "valid certificate." Of course, an individual who holds a National Board Certificate in the area of school counseling from the National Board for Professional Teaching Standards must meet the other requirements of LSA-R.S. 17:421.6. In essence, he or she must be employed as a full-time teacher to provide instruction to students. As indicated above, an individual employed as a guidance counselor is not eligible to receive a supplement pursuant to LSA-R.S. 17:421.6.
Class Size Reduction Teachers
 20 U.S.C.A. 6601 et seq. establishes a teacher and principal training and recruiting fund from which state and local education agencies can receive federal grants. Among the uses of the grant funds is for ". . . the hiring of highly qualified teachers to reduce class size . . ."20 U.S.C.A. 6623(a)(2)(B). In your opinion request, you cite examples of ways in which local education agencies may be using these grants for class size reduction. The examples include: hiring teachers to create and teach a new class; assigning teachers for the creation of smaller instructional groups for sustained blocks of time; and having two teachers team teach or working with certain students in a class while the other students remain with the regular classroom teacher.
Based on the descriptions of the duties performed by class size reduction teachers, we conclude that such teachers are employed to instruct students. The positions class size reduction teachers fill can be analogized to both traditional classroom teachers and resource teachers, with the only distinction being the source of funding. Based on the information provided, it is the opinion of this office that class size reduction teachers meet the requirement in LSA-R.S. 17:421.6 that one be a ". . . full-time teacher . . . employed . . . to provide instruction to students. . ." If all of the other requirements of LSA-R.S. 17:421.6 are met, the class size reduction teacher is eligible to receive the supplement.
As indicated in our discussion of librarians, we recommend the use of an annual verification form, signed by both the class size reduction teacher's principal and superintendent. The principal and superintendent of the class size reduction teacher are ultimately the most familiar with the instructional component of each class size reduction teacher's job. In the event that a class size reduction teacher does not instruct students on a regular basis, the principal and superintendent can so indicate.
Master Teachers
The position of "master teacher" is a creation of local school systems, with no definition or description of the position existing in law or regulation. You have indicated that local school systems use the term loosely to refer to teachers having a variety of functions and duties. These duties may include: providing professional development and/or instructional guidance to teachers during instructional time; providing demonstration lessons to teachers; and being a Learning Intensive Networking Communities For Success (LINCS) Content Leader. You stated that LINCS Content Leaders spend at least eighty percent of their time working alongside teachers in the classroom, modeling lessons and co-teaching lessons to students and providing follow-up assistance with the teacher.
Generally, the job description and duties of master teachers that you have outlined include the instruction of students. However, each local education agency may have its own job description for master teachers in its parish. The amount of time devoted to the instruction of students by master teachers may vary from parish to parish or school to school. Some local education agencies may utilize their master teachers as LINCS Content Leaders, who spend a majority of their time in classrooms assisting classroom teachers and taking part directly in the instruction of students. On the other hand, a local education agency and/or individual school may utilize its master teachers to perform administrative functions or professional development of teachers outside of the classroom.
Once again, the essential determination that must be made is whether, in practice, the master teacher applying for the supplement instructs students on a regular basis. It is not necessary that an individual be assigned to the same classroom and the same set(s) of students like a classroom teacher. What is essential is that the superior teaching skills of the National Board Certified Teacher are being utilized in the instruction of students. The determination of whether a master teacher instructs students on a regular basis must be made by the local officials who employ the master teacher. We refer you to our discussion of the annual verification form to be completed by the principal and superintendent of each individual applying for a supplement. If a master teacher's principal and superintendent verify the master teacher's eligibility for a supplement on an employment verification form, as outlined herein, the master teacher is eligible to receive a supplement, pursuant to LSA-R.S. 17:421.6.
A question likely to arise with master teachers who perform administrative functions is whether an individual who earns a National Board Certificate while teaching and moves into a master teacher position can continue to receive a supplement under LSA-R.S. 17:421.6. In order to continue to receive the supplement, an individual must either be classified as a school administrator, pursuant to LSA-R.S. 17:421.6(A)(2), or, through his or her capacity as a master teacher, must continue to instruct students on a regular basis.
Resource or Itinerant Teachers
Resource teachers are generally employed as classroom teachers. They are distinguishable from traditional classroom teachers in that they are typically not assigned large numbers of students in one class or classes. Resource teachers draw students out of their classroom throughout the day to provide instruction to individual students or small groups of students on a variety of topics and/or to present material to meet certain special needs. Itinerant teachers perform a similar function to that of resource teachers, but do so at a variety of different sites throughout the school week. We would also include in this category teachers who, although not assigned one class or the same classes each day, pull entire classes of students from throughout the school to provide instruction in specialized areas, like computer lab teachers.
It is the opinion of this office that resource and itinerant teachers are the equivalent of traditional classroom teachers for the purposes of LSA-R.S. 17:421.6 and are employed to instruct students. It is our opinion that resource and itinerant teachers meet the requirement in LSA-R.S. 17:421.6 that one be a ". . . full-time teacher . . . employed . . . to provide instruction to students. . ." If all of the other requirements of LSA-R.S. 17:421.6 are met, resource and itinerant teachers are eligible to receive the supplement.
We again suggest that the Department of Education rely upon an annual verification of eligibility by the resource or itinerant teacher's principal and superintendent. The principal and superintendent of the resource or itinerant teacher are ultimately the most familiar with the instructional component of each resource or itinerant teacher's job. In the event that a resource or itinerant teacher does not instruct students on a regular basis, the principal and superintendent can so indicate.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
With best regards,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _____________________________ Katherine M. Whitney Assistant Attorney General
RPI:KMW:lrs
Date Requested:
Date Released: October 15, 2003