McClendon, j.
|2The surviving husband and heir of a tenured teacher appeals a summary judgment dismissing a claim for wrongful demotion against the Louisiana State Board of Elementary and ^Secondary Education (BESE) and denying his crossmotion for summary judgment. For the following reasons, we affirm.
FACTUAL AND PROCEDURAL HISTORY
Susan Ann Smith Hays was a permanent full-time teacher and administrator at the Northwest Developmental Center (NDC), a special school within the Special School District Number One (SSD) operated by BESE. Mrs. Hays served as principal at NDC from July 1, 1992 through June 30, 2004, and acquired tenure in that position. During- her last year of employment in that position, her maximum salary stated in her contract was $73,926.96.
By the 2004-05 fiscal year, the SSD experienced a significant decrease in student enrollment at various special schools, accompanied by budget reductions and elimination of employee positions. NDC had only four students enrolled at the beginning of the 2004 school year, compared to eleven enrolled at the beginning of the 2002 school year. At the end of the 2004 school year, NDC had only two enrolled students. The SSD prepared and submitted to BESE a “reduction in force” (RIF) plan to deal with its enrollment and budgetary reductions. The RIF plan called for the elimination of principal positions at seven of the SSD schools, including NDC. BESE approved the RIF plan on April 15, 2004. As approved, the RIF plan provided that affected employees would be contacted in the order of their seniority and advised of their options, and that all actions taken to implement the RIF would be in accordance with the Louisiana Department of Education’s Personnel and Administrative Manual of Special School District and Board Special Schools.
On April 19, 2004, all SSD employees were mailed copies of a detailed memorandum explaining the RIF plan. On June 7, 2004, the SSD began issuing notices of the implementation of the RIF plan to affected employees in the order |sof their seniority, offering available positions that were either vacant or held by employees with less seniority.
Mrs. Hays was contacted on June 10, 2004, and advised that she would be affected by the elimination of the position of principal at NDC. She was offered a teaching position at any of eight special schools, including NDC, and opted to accept a position at NDC. Effective July 1, 2004, her salary in her new position was $64,383.09. However, Mrs. Hays expressly noted on her “SSD Salary Computation Form” that, by accepting her new position, she was not waiving her claim that she was improperly demoted from her prior salary level.
On December 7, 2004, Mrs. Hays filed a petition in the 19th Judicial District Court, naming BESE as defendant and seeking declaratory judgment that BESE illegally demoted her and recovery of the difference between her prior salary and her new lower salary, plus all emoluments associated with her prior salary.
On December 30, 2004, BESE filed its answer, denying that its actions contra *820 vened Louisiana law and denying any liability to Mrs. Hays.
Mrs. Hays died on March 10, 2005. Her husband, Allen Ray Hays, was subsequently placed in possession of her litigious rights in this action, and was substituted as plaintiff.
On November 6, 2008, plaintiff filed a motion for summary judgment on the merits. On February 27, 2009, BESE responded with a cross-motion for summary judgment, focusing on the legal issue of whether the laws relating to teacher tenure applied to and regulated its implementation of the SSD RIF plan.
Both motions were eventually heard on April 27, 2009. The trial court ruled in favor of BESE on both motions, denying plaintiffs motion and granting BESE’s motion, dismissing the action with prejudice and at plaintiffs costs. Its judgment to the foregoing effect was signed on May 5, 2009.
Plaintiff now appeals, seeking reversal of the trial court’s judgment and judgment on his motion in his favor.
|¿ASSIGNMENT OF ERROR'
In this appeal, plaintiff assigns the following as error:
The district court erred in finding that the rights of tenured teacher[s] are forfeited and meaningless under BESE’s Reduction in Force policy such that BESE may demote tenured teachers without [first] providing [a] tenure hearing.
BESE, on the other hand, maintains that the implementation of a RIF, as authorized by LSA-R.S. 17:81.4, does not invoke the teacher tenure provisions of LSA-R.S. 17:45, for special school teachers, or LSA-R.S. 17:441, et seq., the general teacher tenure law. BESE argues that the RIF procedures were properly implemented and that it owed no duty to plaintiff to provide a tenure hearing.
STANDARD OF REVIEW
Summary judgment is subject to de novo review on appeal, using the same standards applicable to the trial court’s determination of the issues. Peak Performance Physical Therapy & Fitness, LLC v. Hibernia Corp., 07-2206, p. 5 (La. App. 1 Cir. 6/6/08), 992 So.2d 527, 530, writ denied, 08-1478 (La.10/3/08), 992 So.2d 1018. The summary judgment procedure is expressly favored in the law, and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. LSA-C.C.P. art. 966 A(2). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show that there is no genuine issue as to material fact, and that the mover, is entitled to judgment as a matter of law. LSA-C.C.P. art. 966 B.
As conceded by the parties, the questions presented for our determination are purely legal ones, rather than factual ones, and therefore particularly appropriate for determination by summary judgment “as a matter of law.” See LSA-C.C.P. art. 966 C(l). In a case involving no dispute regarding material facts, but only the determination of a legal issue, a reviewing court must also apply the de novo standard of review, under which the trial court’s legal conclusions are not entitled to deference. Kevin Associates, L.L.C. v. Crawford, 03-0211, p. 15 (La.1/30/04), 865 So.2d 34, 43; La. Workers’ Comp. Corp. v. La. Ins. Guar. Ass’n, 08-0885, p. 8 (La.App. 1 Cir. 5/13/09), 20 So.3d 1047, 1052, writ denied, 09-1308 (La.10/9/09), 18 So.3d 1282.
APPLICABLE LAW

The Reduction in Force (RIF) Statute

Louisiana Revised Statutes 17:81.4 was first enacted in 1983, and requires school *821 boards to establish published rules and policies for the dismissal of teachers due to “reductions in force,” or layoffs. It provides, in pertinent part:
A. Not later than January 1st, 1984, each city and parish school board shall develop and adopt rules and policies which it shall use in dismissing teachers at any time a reduction in force is instituted by such school board. Such rules and policies shall be made available for inspection by teachers, other school employees and the general public within ten days after final adoption.
[[Image here]]
D. Not later than January 1, 1996, all reduction in force policies of the city and parish school boards and special schools as provided in this Section shall include but not be limited to the following minimum standards:
(1) Certification, if applicable.
(2) Seniority in the system.
(3) Tenure of employees.
(4) Academic preparation, if applicable, within the employee’s field.
(5)(a) The right of an employee notified of an action which results from implementation of a reduction in force policy to request in writing a review of such action and to receive notice of the results of such review.
(b) The right of an employee to pursue the matter through the school board’s adopted grievance procedure.
Additionally, Section 109 of the manual’s RIF policy, adopted pursuant to LSA-R.S. 17:81.4, provides, in part, that “[employees whose position is being eliminated as the result of a RIF Plan will be notified.” Further, Section 111 provides:
An employee reassigned to a different job title shall be placed on the appropriate salary schedule at the step for which the employee is qualified. An employee accepting assignment to a lesser position will be placed within the salary schedule for the lesser position, at the level appropriate to the employee’s years of experience and education.

Tenure Provisions

The Teacher Tenure Law (TTL), LSA-R.S. 17:441, et seq., provides Louisiana’s public school teachers with tenure in their employment and protects them from discharge, suspension, or demotion for causes other than those provided by statute. Rousselle v. Plaquemines Parish Sch. Bd., 93-1916 (La.2/28/94), 633 So.2d 1235, 1241. The purpose of the law is to ensure teachers with security in the position, grade, or status they have attained, and not merely to ensure them with teaching employment. Id., 93-1916, 633 So.2d at 1242. The provisions of the TTL must be liberally construed in favor of teachers, since teachers are its intended beneficiaries. Palmer v. La. State Bd. of Elementary & Secondary Educ, 02-2043, p. 8 (La.4/9/03), 842 So.2d 363, 369. However, the TTL was not intended “to guarantee job security where there were no jobs.” Rousselle, 93-1916, 633 So.2d at 1243, citing Paul R. Baier, Work of the Appellate Courts 1974-1975: Administrative Law and Procedure, 36 La.L.Rev. 464, 469 (1976).
As part of its constitutional mandate, BESE has general authority to supervise and control Louisiana’s public educational system, including special schools. LSA-Const. art. VIII, § 3; Foster v. Bd. of Elementary & Secondary Educ., 479 So.2d 489, 494 (La.App. 1 Cir.1985). Additionally, LSA-R.S. 17:43, et seq., serve to give BESE the same authority to directly control special school teachers that parish and municipal school boards possess regarding their teachers under LSA-R.S. 17:442-44. See Foster, 479 So.2d at 495. *822 Parish school boards have broad responsibility in administering the public schools, including the power, when acting in good faith, to consolidate positions or to abolish them. Palone v. Jefferson Parish Sch. Bd., 306 So.2d 679, 681 (La.1975). BESE clearly possesses the same authority regarding the special schools under its jurisdiction.
Louisiana Revised Statutes 17:45 sets forth the procedures and standards by which teachers in special schools may acquire tenure and by which they may be discharged, removed, or demoted. It was originally enacted in 1979 for the purpose of providing tenure to teachers within the special school system, and to provide those teachers with the same rights and privileges afforded regular public school teachers under LSA-R.S. 17:442, et seq. LSA-R.S. 17:43; Palmer, 02-2043, pp. 8-9, 842 So.2d at 369. Louisiana Revised Statutes 17:45 provides in pertinent part:
A. ... A teacher [in a special school] shall be entitled to tenure benefits as follows:
(2)(a) A permanent teacher in a special school shall not be removed from office except upon written and signed charges of wilful neglect of duty, or incompetency, or dishonesty, and then only if found guilty after a hearing by the board or by a committee of the board, which hearing may be public or private at the option of the teacher. At least fifteen days in advance of the date of the hearing, the board shall furnish the teacher with a copy of the written charges, the teacher shall have the right to appear before the board, or committee of the board, with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board or committee of the board at the hearing. Any finding of a committee of the board shall be reviewed and acted upon by the full board. The board may set aside or modify the findings of a committee of the board. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction.
[[Image here]]
(3)(b) During the probationary period in the position to which promoted, a teacher shall not be disciplined, removed, or demoted to the lower position from which he was promoted except in compliance with the provisions of Subsection A(l) of this Section. At the expiration of the probationary period in the higher position, a teacher, unless removed or demoted in accordance with Subsection A(l) of this Section, shall automatically acquire permanent status in the higher position and thereafter may not be disciplined, removed, or demoted from such higher position in compliance with the provisions of Subsection A(2) of this Section.[1]
[[Image here]]
C. Nothing contained in the Louisiana Revised Statutes of 1950 shall be construed as conferring upon the board the authority to make rules and regulations which may impair or nullify the provisions of this Subpart and Section.

Statutory Construction

The paramount consideration in statutory construction is ascertainment of the legislative intent and the reason or reasons which prompted the legislature to enact *823 the law. Foti v. Holliday, 09-0093, p. 6 (La.10/30/09), 27 So.3d 813, 817; M.J. Farms, Ltd. v. Exxon Mobil Corp., 07-2371, p. 13 (La.7/1/08), 998 So.2d 16, 27. It is well established that the starting point for the interpretation of any statute is the language of the statute itself. Foti, 09-0093 at p. 6, 27 So.3d at 817; Dejoie v. Medley, 08-2223, P. 6 (La.5/5/09), 9 So.3d 826, 829. When a statute is clear and unambiguous and its application does not lead to absurd consequences, the provision is applied as written with no further interpretation made in search of the Legislature’s intent. Foti, 09-0093 at p. 6, 27 So.3d at 817; LSA-C.C. art. 9; LSA-R.S. 1:4. In the event the language of a statute is susceptible of different meanings, the interpretation must best conform to the purpose of the law. LSA-C.C. art. 10.
When analyzing legislative history, it is presumed the legislature’s actions in crafting a law were knowing and intentional. Foti, 09-0093 at p. 6, 27 So.3d at 817; M.J. Farms, Ltd., 07-2371 at pp. 13-14, 998 So.2d at 27. More particularly, the legislature is presumed to enact each statute with deliberation and with full knowledge of all existing laws on the same subject. Thus, legislative language will be interpreted on the assumption the legislature was aware of existing statutes, well established principles of statutory construction and with knowledge of the effect of their acts and a purpose in view. M.J. Farms, Ltd., 07-2371 at pp. 13-14, 998 So.2d at 27.
DISCUSSION
In the ease sub judice, plaintiff argues that LSA-R.S. 17:45 is clear. Plaintiff asserts that Mrs. Hays was demoted due to the reduction in her salary, and she was therefore entitled to a hearing in accordance with the statute. Because Mrs. Hays was not given a hearing, plaintiff argues that her tenure rights were violated. Plaintiff argues that these statutorily protected tenure rights must take precedence over any reduction in force procedure. BESE |9maintains that Mrs. Hays was not removed from her position for willful neglect of duty, incompetency, or dishonesty, so the provisions of the tenure law are inapplicable.
The facts in this matter were essentially undisputed, and the trial court stated that the question it was to decide was whether the teacher tenure law for special schools, LSA-R.S. 17:45, or the RIF law, LSA-R.S. 17:81.4, applied. The court made the determination that there was no termination, demotion, or action taken for cause as defined under LSA-R.S. 17:45. The court found that plaintiff’s position was eliminated due to a reduction in enrollment and budget cuts. Based on those facts, the court concluded that the tenure law was not controlling and there was no need for a tenure hearing since BESE did not allege or contend in any way that plaintiff “was in any way deficient.” Rather, the trial court found LSA-R.S. 17:81.4 controlling. The court also stated that to accept plaintiffs argument would mean that it would have to completely ignore the reduction in work force statute and the reason that it was enacted. The court stated:
And I really kind of question under these facts whether or not this constitutes a demotion as claimed by plaintiff, and the reason I do that is it almost can’t be a demotion since the position she occupied no longer exists. And this is not a situation where she’s dropped down from principal to teacher, someone else comes in and occupies this former principal position. It no longer exists. And, again, it wasn’t a demotion for cause, rather, only because of the reduction in force, that these certain positions were being eliminated. And, again, as I read ... and consider plaintiffs argument, it seems that ... BESE would *824 have been better suited simply to terminate the position as principal and thank Ms. Hays for her years of service. But by choosing to keep her and complying with the statute that says we’re going to put you in this position, we’re going to look at your years of experience, and based on that — I mean, she’s not put at a first year teacher’s position. She was way up on the pay schedule. That it just wouldn’t make sense to say they’re better off terminating her than trying to find a spot to place her in as a teachered [sic] employee. And that’s clearly not what, I think, 17:81.4 would require.
The trial court stated that the only way to give a common-sense meaning to the statutes at issue, and give LSA-R.S. 17:81.4 any kind of meaning, was to find the reduction in force statute controlling. Finding that BESE and the school board acted in compliance with the RIF statute and procedures, the trial court dismissed plaintiffs suit.
|inWe agree. Plaintiff was not removed from office. Rather, her position was eliminated. There were no “written and signed charges of willful neglect of duty, or incompetency, or dishonesty.” By the plain language of the statute, the provisions of LSA-R.S. 17:45 regarding the removal of a tenured teacher in a special school are not applicable in this matter. Further, a statute must be applied and interpreted in a manner that is logical and consistent with the presumed purpose and intent of the legislature. SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695, pp. 11-12 (La.6/29/01), 808 So.2d 294, 302. Thus, we must interpret the RIF statute under the assumption that the legislature was aware of the tenure law at the time LSA-R.S. 17:81.4 was passed. See M.J. Farms, Ltd., 07-2371 at pp. 13-14, 998 So.2d at 27. Additionally, we note that pursuant to the RIF statute, an employee has the right to request in writing a review of an action resulting from implementation of a RIF and to pursue the matter through the school board’s adopted grievance procedure. LSA-R.S. 17:81.4 D(5). We conclude that the trial court was correct in finding the RIF statute controlling.
Accordingly, upon our de novo review of the record, the trial court properly denied the motion for summary judgment filed by plaintiff, granted BESE’s motion for summary judgment, and dismissed plaintiffs suit.
CONCLUSION
The judgment of the trial court is affirmed. All costs of this appeal are assessed to the plaintiff-appellant.
AFFIRMED.
GAIDRY, J. dissents with reasons.

. The word "except” was obviously intended to be placed before the phrase “in compliance with,” but was inadvertently omitted. See LSA-R.S. 17:444 A(2). Otherwise, if the language of LSA-R.S. 17:45 A(3) is read literally, a promoted permanent teacher in a special school could never be removed or disciplined under Subsection A(2) for "wilful neglect of duty, or incompetency, or dishonesty.” Such an interpretation would, of course, be absurd.