577 So.2d 1205 (1991)
Billye J. BURNS, Plaintiff/Appellee,
v.
MONROE CITY SCHOOL BOARD, Defendant/Appellant.
No. 22050-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1991.
Writ Denied June 14, 1991.
*1206 McLeod, Swearingen, Verlander, Dollar, Price & Noah by David E. Verlander, III, Monroe, for defendant, appellant.
Jones and Smith by Benjamin Jones, Monroe, for plaintiff, appellee.
Before BAILES, FOOTE and SCOTT, JJ., ad hoc.
BAILES, Judge ad hoc.
Plaintiff, Billye J. Burns, filed this action against the defendant, Monroe City School Board, hereinafter referred to simply as MCSB, for judicial determination of the legality of the defendant's termination of her employment as Supervisor of Child Welfare and Attendance. The trial court found plaintiff had been wrongfully discharged from her supervisory position. The court ordered the defendant to pay the plaintiff the differential between the salary she was paid as a tenured teacher at Wossman High School, to which she had been assigned as a teacher, and the salary she would have earned as Supervisor of Child Welfare and Attendance for a period of two years, the appropriate contribution to her retirement system, that her service records be amended to reflect an additional two years service at supervisor status for calculation of retirement, continuous service and seniority, appropriate interest on such sums due, and attorney fees of $5,000.00.
From that judgment, the defendant has suspensively appealed. The plaintiff has answered the appeal, and urges reversal of the trial court's refusal to order the reinstatement of the plaintiff in her supervisory position, and further, plaintiff seeks an increase in the award of attorney fees to compensate for services rendered in this appeal.
In 1985 MCSB increased its supervisory personnel to include Dr. John Tollett, Supervisor of Guidance Counseling and Testing; Margaret Feazell, Supervisor of Adult and Vocational Education; Lorraine Slacks, Curriculum Coordinator; J.B. Patterson, Jr., Assistant Business Manager; and the plaintiff, Supervisor of Child Welfare and Attendance. The appointments of Lorraine Slacks, J.B. Patterson, Jr. and the plaintiff were made effective as of August 19, 1985. The school board did not fix the term of the contract, however, the written contract which the plaintiff signed provided for a term of two years, beginning August 19, 1985, and ending August 19, 1987. The appointments of Dr. John Tollett and Margaret Feazell were made effective as of September 4, 1985.
The plaintiff lacked certification at the time of her appointment; however, this deficiency was eliminated in 1986 when she obtained the required certification. Margaret Feazell had no certification and none had been acquired at the time the MCSB acted against plaintiff. Lorraine Slacks was certified at the time of her appointment. The certification status of Dr. John Tollett is not in question as he resigned from his position prior to the termination of the plaintiff, and Mr. Patterson's position required no certification.
For compliance with La.R.S. 17:81.4 C, the MCSB had in place a written reduction in force (RIF) policy on January 1, 1987. The statute provides:
Not later than January 1, 1987, each city and parish school board shall develop and adopt rules and policies which it shall use in dismissing school employees other than those for which provision is made in subsection (A) and (B), at anytime a reduction in force is instituted by the school board. Such rules and policies shall be made available for inspection by any such school employee and the general public within ten days after their final adoption. (Emphasis supplied)
The RIF policy adopted by the MCSB provides, inter alia, that:
When conditions, such as significant enrollment decline, the loss of federal or special state funds, the discontinuance of special programs or projects, or a marked decline in school revenues, necessitate a reduction in force ..., it shall be the policy of the Monroe City School Board to accomplish the reduction in *1207 force utilizing the following priorities and procedures.
. . . . .
The basic criteria in making decisions regarding the reduction in force will be the administration and maintenance of a quality, balanced educational program and services for the students of the Monroe City School System. Therefore, in making decisions regarding the reduction in force of certificated and non-certificated personnel in the various categories of employment, persons with the certifications, qualifications and skills necessary to provide a balanced educational program and to maintain and operate the school system will be retained.
. . . . .
A general notice will be given to all employees in respective categories when the Board has determined that reduction in force is necessary in those categories....
As the result of the election of school board members held in the fall of 1986, five new members were elected to the MCSB, and of the seven-member board two members were retained. This newly constituted board found the then current budget was approximately $700,000 out of balance. At the board meeting held on January 20, 1987, economic measures were adopted, including a reduction in the number of supervisors. It was determined at that time that the system was overstaffed by two supervisors whose salaries were paid out of the general fund. As a result of the board's adoption of certain cost cutting measures which included a reduction in force of two positions within the administrative or supervisory category, the superintendent sent a memorandum to all central office supervisors and administrators advising them of the board's action.
This notice was addressed as follows:
TO: All Central Office Supervisor and Administrators
DATE: January 27, 1987
At its regular meeting on January 20, 1987, the Monroe City School Board voted to have a reduction in force of two (2) positions within the administrative or supervisory category.
This decision was made after a study by the Board Finance Committee and in light of the need to take economizing on cost saving actions throughout the school system.
Pursuant to board policy, notice is hereby given that this correspondence serves as the thirty (30) day general notice as required by the Reduction in Force Policy.
You are further advised that the Superintendent and Board will take into consideration the total needs of the system in making a determination as to which positions will be eliminated.
If an individual so removed because of a RIF had previously acquired tenure in a lower classification with the system, he/she shall revert back to his/her former position or one paying the same salary as his or/her former tenured position.
(signed) N.J. Stafford
N.J. STAFFORD, Ed. D.
Superintendent
In April, 1987, the superintendent had plaintiff sign a statement that she had received the RIF notice.
The next significant action of the Board in furtherance of its RIF plan was on June 2, 1987, when it received the notice from the Finance Committee that at its June 16, 1987 meeting it would submit to the board its proposal for a reduction in force.
The agenda for the June 16, 1987 meeting provided "Budget Cuts and Economy Measures." This report stated, in pertinent part, that:
In an effort to balance the budget and to further economize effecting needed savings for the Monroe City School Board, the Finance Committee and the Superintendent recommend the following:
. . . . .
6. That there shall be a reductionin-force of the positions of Supervisor of Testing and Guidance, Assistant Business Manager and Supervisor of Child Welfare and Attendance. The effective date of this reduction shall be *1208 July 1, 1987. The responsibilities of these positions shall be transferred to other personnel.
Annual Estimated Savings: $90,000.00.
On the June 16, 1987 agenda the above recommendation of the Finance Committee was designated as number XVII. "Action: Budget Cuts and Economy Measures." At this meeting the agenda was approved, however, agenda item XVII was deleted and referred to the board attorney for corrections.
It is noted that this is the first reference made in the RIF action of the Board that the plaintiff's supervisory position was being considered. Also, it is noted that at this meeting the resignation of Dr. John Tollett, as a supervisor, was accepted.
On June 18, 1987, the superintendent met with both the plaintiff and J.B. Patterson, Jr., to advise them of his plan to eliminate their respective positions. There is a conflict in what transpired at this meeting. The superintendent testified that he advised both plaintiff and Patterson that their contracts would be allowed to expire. Both plaintiff and Patterson denied that the superintendent made such a statement to them. Plaintiff's testimony is that the assistant superintendent, Richard Miles, on June 12, 1987, told her that she and Mr. Patterson would not be returning in the fall in a supervisory capacity and that he was relaying a message from the superintendent. It was after this date that plaintiff's attorney (not present counsel) wrote the superintendent that the proposed action of the board in eliminating Mrs. Burns was, among other things, a violation of the RIF policy. While the trial court did not expressly resolve the testimonial dispute between the plaintiff and the superintendent of whether a verbal notice was given the plaintiff that her contract would be allowed to expire, thus terminating her as Supervisor of Child Welfare and Attendance, the trial judge aptly addressed the underlying issue in his written reasons for judgment in stating:
This court is compelled to find, by a preponderance of evidence adduced at trial, including the testimony of Dr. Stafford, Mrs. Burns and Mr. Patterson, that the Board acting on advice of its able counsel, chose not to apply the RIF policy to Mrs. Burns. Instead, it purported to selectively non-renew Mrs. Burns' contract, while at the same time renew the contract of another supervisor, Mrs. Feazell, who possessed certification and seniority inferior to Mrs. Burns. Thus, the effect of this selective non-renewal of Mrs. Burns contract is to deprive her the benefits of the detailed protections afforded by the RIF policy, which is the only method by which a reduction in force can be implemented by the MCCS (sic).
An additional factor points up the defendant school board's abiding intention to follow the reduction in force policy was the absence of any action of the board to terminate plaintiff's contract which would serve as the basis for the verbal notice the superintendent testified he gave the plaintiff but which notice was denied by plaintiff.
La.R.S. 17:444 B(3), under which plaintiff and the MCSB contracted, provided:
The employment provided for in this Section shall be for a term of not less than two nor more than four years, and said term shall be specified in a written contract, which shall contain performance objectives.... The board and the employee may enter into subsequent contracts for such employment. Not less than sixty days prior to the termination of such a contract, the superintendent shall notify the employee of termination of employment under such contract ...
Further, the superintendent had no board authority or action to warrant a notice of contract termination. The board did not act in the matter until its meeting of June 24, 1987, less than sixty days before reconduction of the contract.
The defendant attempts to escape the consequences of its action on June 24, 1987, through the incongruous testimony of the superintendent. It was his testimony that it was not the intention of the board to invoke the RIF policy, and that such a policy could not be invoked without an accompanying reduction in teachers. *1209 Certainly the policy can be implemented in the administrative positions of the board, or at the teaching level, or it could affect the entire system. This is made plain beyond doubt by La.R.S. 17:81.4 A, B, and C. Such a position is made untenable by the plain wording of the notice of invoking the RIF policy distributed to the administrative personnel quoted supra.
We find the action of the MCSB which culminated in the discharge of the plaintiff as a contract supervisor, was begun and continued every step along the way to the school board meeting of June 24, 1987, as a reduction in force and was effectively governed and controlled by the RIF policy in force at the time of the reduction in force was initiated on January 20, 1987.
Insofar as this record reflects, during the entire service of this plaintiff, as a teacher and as a supervisor for the MCSB, there has been no criticism made of her job performance nor of her qualifications. The record shows that she received a Bachelor of Science in Education in 1958, a Master of Science in 1965, which degree was enhanced by the "Plus 30" designation. She has done further post-graduate studies in the recent past. Her experience spans over thirty years as a teacher and educator. She is certified by the State Department of Education as a teacher, and as a principal of both elementary and secondary schools, as an instruction supervisor, and as a supervisor of child welfare and attendance.
Under the defendant's RIF proceeding, it apparently was necessary to eliminate three supervisors. Two supervisors were eliminated by resignations, thus leaving one more for board action. Under the RIF policy, as the plaintiff had certification for her position, and Mrs. Feazell had no certification, the plaintiff should have been retained. For reasons not disclosed by the record, the board chose to follow the recommendations of the superintendent and its counsel, thus abandoning the RIF policy provisions, and eliminated plaintiff under the guise of permitting her contract to expire.
The instant case is one of first impression. The only case cited by either party involving a reduction in force policy is S.J. A.E. v. St. John the Baptist Parish School Board, 494 So.2d 553 (La.App. 5th Cir. 1986), writ granted in part on other grounds, 497 So.2d 1387 (La.1986). This cited case involves the application of the RIF policy of that school board in resolving the conflict between the rights of teachers and workers on a so-called "super-seniority" list and of the striking teachers and workers whose contracts ante-dated those individuals named on the "super-seniority" list. Therein the court held the granting of superior rights to those on the "super-seniority" list violated the prior contracts of the striking teachers and workers. This cited case has no application herein.
Within the context of the facts of the instant case, we hold the RIF policy is controlling and must be adhered to and followed. The rationale of the policy was to prevent exactly what has occurred herein. The personal preference of the board or its superintendent is not to determine who will be discharged and who will be retained.
We find the plaintiff was entitled to remain in her contract position of supervisor for two additional years through reconduction of her original contract.
La.C.C. Art. 1983 states:
Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith.
Also, La.C.C. Art. 2002 provides:
An obligee must make reasonable efforts to mitigate the damages caused by the obligor's failure to perform ...
As the plaintiff in no way contributed to the breach of the contract which she had entered into with the defendant, for its breach she is entitled to an award of damages. In an award of damages, the issue of quantum arises. What is the criteria, or what is to be the basis for such an award?
By accepting the teaching position at Wossman High School, and remaining in *1210 that position for at least two years, the plaintiff has complied with the requirements of La.C.C. Art. 2002, supra. A reasonable basis for an award of damages for the breach of contract is the monetary loss to the aggrieved party. We find the plaintiff is entitled to recover from the MCSB the dollar difference between the compensation due her as Supervisor of Child Welfare and Attendance and that paid to her as teacher at Wossman High School, plus legal interest on such amounts from the respective pay periods until paid, and the defendant pay the appropriate contribution due the teachers' retirement system on such amount.
The plaintiff has answered the appeal seeking to have this court reinstate her to the position of Supervisor of Child Welfare and Attendance, and for an increase in the trial court's award of attorney fees.
As to reinstatement, aside from the RIF policy enacted by the school board in compliance with the statute mandating such a policy, the MCSB has the sole administrative responsibility of filling the supervisory positions of the system. There is no tenure acquired now in such positions. The court will not interfere in the administrative function of the school board, apart from the RIF policy violation herein considered.
As to the attorney fees, the trial court awarded plaintiff the amount of $5,000.00, which are herein sought to be increased. We find no contractual or statutory authority for an award of attorney fees. See La.C.C. Art. 2000. Plaintiff cites the case of Jackson v. St. Landry Parish School System, 407 So.2d 51 (La. App. 3rd Cir.1981), writs denied, 412 So.2d 98, 99 (La.1982), as authority for such an award; we hold that attorney fees are an awardable item of damage only when expressly authorized by statute, or when the contract between the parties stipulates such recovery. Further, plaintiff cites the case of Williams v. Lafayette Parish School Board, 533 So.2d 1359 (La.App. 3d Cir.1988), writ denied, 536 So.2d 1237 (La. 1989), in support of her position. It appears in that case that the court based such an award on La.R.S. 23:632. We find that statute inapplicable in the instant case.
Accordingly, for the foregoing reasons, the judgment of the trial court ordering the amending of the plaintiff's personnel record to show two (2) years of service as supervisor not in fact rendered, and awarding attorney fees of $5,000.00, is reversed. For the reasons herein assigned there is judgment in plaintiff's favor and against the defendant, Monroe City School Board, awarding plaintiff the monetary difference between the compensation due her as Supervisor of Child Welfare and Attendance and that paid to her as teacher at Wossman High School for the period from August 19, 1987 to August 19, 1989, plus legal interest on such amounts from the respective pay periods until paid, and the defendant, Monroe City School Board, is to pay the appropriate contribution due the teachers' retirement system on such differential in pay as herein ordered. Defendant is cast for such court costs as can be assessed under LSA-R.S. 13:4521.
Judgment reversed in part, affirmed in part, and rendered.