39 So.3d 818 (2010)
Susan HAYS
v.
LOUISIANA STATE BOARD OF ELEMENTARY AND SECONDARY EDUCATION.
No. 2009 CA 1386.
Court of Appeal of Louisiana, First Circuit.
June 11, 2010.
David K. Nelson, Jeffrey N. Boudreaux, Baton Rouge, Louisiana, for Plaintiff/Appellant, Ray Hays, as successor to Susan Hays.
James D. "Buddy" Caldwell, Attorney General, Angelique Duhon Freel, Assistant Attorney General, Baton Rouge, Louisiana, for Defendant/Appellee, Louisiana *819 State Board of Elementary and Secondary Education.
Jonathan C. Augustine, Baton Rouge, Louisiana, for Amicus Curiae Louisiana Association of Educators.
Before DOWNING, GAIDRY, and McCLENDON, JJ.
McCLENDON, J.
The surviving husband and heir of a tenured teacher appeals a summary judgment dismissing a claim for wrongful demotion against the Louisiana State Board of Elementary and Secondary Education (BESE) and denying his crossmotion for summary judgment. For the following reasons, we affirm.

FACTUAL AND PROCEDURAL HISTORY
Susan Ann Smith Hays was a permanent full-time teacher and administrator at the Northwest Developmental Center (NDC), a special school within the Special School District Number One (SSD) operated by BESE. Mrs. Hays served as principal at NDC from July 1, 1992 through June 30, 2004, and acquired tenure in that position. During her last year of employment in that position, her maximum salary stated in her contract was $73,926.96.
By the 2004-05 fiscal year, the SSD experienced a significant decrease in student enrollment at various special schools, accompanied by budget reductions and elimination of employee positions. NDC had only four students enrolled at the beginning of the 2004 school year, compared to eleven enrolled at the beginning of the 2002 school year. At the end of the 2004 school year, NDC had only two enrolled students. The SSD prepared and submitted to BESE a "reduction in force" (RIF) plan to deal with its enrollment and budgetary reductions. The RIF plan called for the elimination of principal positions at seven of the SSD schools, including NDC. BESE approved the RIF plan on April 15, 2004. As approved, the RIF plan provided that affected employees would be contacted in the order of their seniority and advised of their options, and that all actions taken to implement the RIF would be in accordance with the Louisiana Department of Education's Personnel and Administrative Manual of Special School District and Board Special Schools.
On April 19, 2004, all SSD employees were mailed copies of a detailed memorandum explaining the RIF plan. On June 7, 2004, the SSD began issuing notices of the implementation of the RIF plan to affected employees in the order of their seniority, offering available positions that were either vacant or held by employees with less seniority.
Mrs. Hays was contacted on June 10, 2004, and advised that she would be affected by the elimination of the position of principal at NDC. She was offered a teaching position at any of eight special schools, including NDC, and opted to accept a position at NDC. Effective July 1, 2004, her salary in her new position was $64,383.09. However, Mrs. Hays expressly noted on her "SSD Salary Computation Form" that, by accepting her new position, she was not waiving her claim that she was improperly demoted from her prior salary level.
On December 7, 2004, Mrs. Hays filed a petition in the 19th Judicial District Court, naming BESE as defendant and seeking declaratory judgment that BESE illegally demoted her and recovery of the difference between her prior salary and her new lower salary, plus all emoluments associated with her prior salary.
On December 30, 2004, BESE filed its answer, denying that its actions contravened *820 Louisiana law and denying any liability to Mrs. Hays.
Mrs. Hays died on March 10, 2005. Her husband, Allen Ray Hays, was subsequently placed in possession of her litigious rights in this action, and was substituted as plaintiff.
On November 6, 2008, plaintiff filed a motion for summary judgment on the merits. On February 27, 2009, BESE responded with a cross-motion for summary judgment, focusing on the legal issue of whether the laws relating to teacher tenure applied to and regulated its implementation of the SSD RIF plan.
Both motions were eventually heard on April 27, 2009. The trial court ruled in favor of BESE on both motions, denying plaintiff's motion and granting BESE's motion, dismissing the action with prejudice and at plaintiff's costs. Its judgment to the foregoing effect was signed on May 5, 2009.
Plaintiff now appeals, seeking reversal of the trial court's judgment and judgment on his motion in his favor.

ASSIGNMENT OF ERROR
In this appeal, plaintiff assigns the following as error:
The district court erred in finding that the rights of tenured teacher[s] are forfeited and meaningless under BESE's Reduction in Force policy such that BESE may demote tenured teachers without [first] providing [a] tenure hearing.
BESE, on the other hand, maintains that the implementation of a RIF, as authorized by LSA-R.S. 17:81.4, does not invoke the teacher tenure provisions of LSA-R.S. 17:45, for special school teachers, or LSA-R.S. 17:441, et seq., the general teacher tenure law. BESE argues that the RIF procedures were properly implemented and that it owed no duty to plaintiff to provide a tenure hearing.

STANDARD OF REVIEW
Summary judgment is subject to de novo review on appeal, using the same standards applicable to the trial court's determination of the issues. Peak Performance Physical Therapy & Fitness, LLC v. Hibernia Corp., 07-2206, p. 5 (La. App. 1 Cir. 6/6/08), 992 So.2d 527, 530, writ denied, 08-1478 (La.10/3/08), 992 So.2d 1018. The summary judgment procedure is expressly favored in the law, and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. LSA-C.C.P. art. 966 A(2). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966 B.
As conceded by the parties, the questions presented for our determination are purely legal ones, rather than factual ones, and therefore particularly appropriate for determination by summary judgment "as a matter of law." See LSA-C.C.P. art. 966 C(1). In a case involving no dispute regarding material facts, but only the determination of a legal issue, a reviewing court must also apply the de novo standard of review, under which the trial court's legal conclusions are not entitled to deference. Kevin Associates, L.L.C. v. Crawford, 03-0211, p. 15 (La.1/30/04), 865 So.2d 34, 43; La. Workers' Comp. Corp. v. La. Ins. Guar. Ass'n, 08-0885, p. 8 (La.App. 1 Cir. 5/13/09), 20 So.3d 1047, 1052, writ denied, 09-1308 (La.10/9/09), 18 So.3d 1282.

APPLICABLE LAW

The Reduction in Force (RIF) Statute
Louisiana Revised Statutes 17:81.4 was first enacted in 1983, and requires school *821 boards to establish published rules and policies for the dismissal of teachers due to "reductions in force," or layoffs. It provides, in pertinent part:
A. Not later than January 1st, 1984, each city and parish school board shall develop and adopt rules and policies which it shall use in dismissing teachers at any time a reduction in force is instituted by such school board. Such rules and policies shall be made available for inspection by teachers, other school employees and the general public within ten days after final adoption.
. . .
D. Not later than January 1, 1996, all reduction in force policies of the city and parish school boards and special schools as provided in this Section shall include but not be limited to the following minimum standards:
(1) Certification, if applicable.
(2) Seniority in the system.
(3) Tenure of employees.
(4) Academic preparation, if applicable, within the employee's field.
(5)(a) The right of an employee notified of an action which results from implementation of a reduction in force policy to request in writing a review of such action and to receive notice of the results of such review.
(b) The right of an employee to pursue the matter through the school board's adopted grievance procedure.
Additionally, Section 109 of the manual's RIF policy, adopted pursuant to LSA-R.S. 17:81.4, provides, in part, that "[e]mployees whose position is being eliminated as the result of a RIF Plan will be notified." Further, Section 111 provides:
An employee reassigned to a different job title shall be placed on the appropriate salary schedule at the step for which the employee is qualified. An employee accepting assignment to a lesser position will be placed within the salary schedule for the lesser position, at the level appropriate to the employee's years of experience and education.

Tenure Provisions
The Teacher Tenure Law (TTL), LSA-R.S. 17:441, et seq., provides Louisiana's public school teachers with tenure in their employment and protects them from discharge, suspension, or demotion for causes other than those provided by statute. Rousselle v. Plaquemines Parish Sch. Bd., 93-1916 (La.2/28/94), 633 So.2d 1235, 1241. The purpose of the law is to ensure teachers with security in the position, grade, or status they have attained, and not merely to ensure them with teaching employment. Id., 93-1916, 633 So.2d at 1242. The provisions of the TTL must be liberally construed in favor of teachers, since teachers are its intended beneficiaries. Palmer v. La. State Bd. of Elementary & Secondary Educ, 02-2043, p. 8 (La.4/9/03), 842 So.2d 363, 369. However, the TTL was not intended "to guarantee job security where there were no jobs." Rousselle, 93-1916, 633 So.2d at 1243, citing Paul R. Baier, Work of the Appellate Courts 1974-1975: Administrative Law and Procedure, 36 La.L.Rev. 464, 469 (1976).
As part of its constitutional mandate, BESE has general authority to supervise and control Louisiana's public educational system, including special schools. LSA-Const. art. VIII, § 3; Foster v. Bd. of Elementary & Secondary Educ., 479 So.2d 489, 494 (La.App. 1 Cir.1985). Additionally, LSA-R.S. 17:43, et seq., serve to give BESE the same authority to directly control special school teachers that parish and municipal school boards possess regarding their teachers under LSA-R.S. 17:442-44. See Foster, 479 So.2d at 495. *822 Parish school boards have broad responsibility in administering the public schools, including the power, when acting in good faith, to consolidate positions or to abolish them. Palone v. Jefferson Parish Sch. Bd., 306 So.2d 679, 681 (La.1975). BESE clearly possesses the same authority regarding the special schools under its jurisdiction.
Louisiana Revised Statutes 17:45 sets forth the procedures and standards by which teachers in special schools may acquire tenure and by which they may be discharged, removed, or demoted. It was originally enacted in 1979 for the purpose of providing tenure to teachers within the special school system, and to provide those teachers with the same rights and privileges afforded regular public school teachers under LSA-R.S. 17:442, et seq. LSA-R.S. 17:43; Palmer, 02-2043, pp. 8-9, 842 So.2d at 369. Louisiana Revised Statutes 17:45 provides in pertinent part:
A. ... A teacher [in a special school] shall be entitled to tenure benefits as follows:
(2)(a) A permanent teacher in a special school shall not be removed from office except upon written and signed charges of wilful neglect of duty, or incompetency, or dishonesty, and then only if found guilty after a hearing by the board or by a committee of the board, which hearing may be public or private at the option of the teacher. At least fifteen days in advance of the date of the hearing, the board shall furnish the teacher with a copy of the written charges, the teacher shall have the right to appear before the board, or committee of the board, with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board or committee of the board at the hearing. Any finding of a committee of the board shall be reviewed and acted upon by the full board. The board may set aside or modify the findings of a committee of the board. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction.
. . .
(3)(b) During the probationary period in the position to which promoted, a teacher shall not be disciplined, removed, or demoted to the lower position from which he was promoted except in compliance with the provisions of Subsection A(l) of this Section. At the expiration of the probationary period in the higher position, a teacher, unless removed or demoted in accordance with Subsection A(l) of this Section, shall automatically acquire permanent status in the higher position and thereafter may not be disciplined, removed, or demoted from such higher position in compliance with the provisions of Subsection A(2) of this Section.[1]
. . .
C. Nothing contained in the Louisiana Revised Statutes of 1950 shall be construed as conferring upon the board the authority to make rules and regulations which may impair or nullify the provisions of this Subpart and Section.

Statutory Construction
The paramount consideration in statutory construction is ascertainment of the legislative intent and the reason or reasons which prompted the legislature to enact *823 the law. Foti v. Holliday, 09-0093, p. 6 (La.10/30/09), 27 So.3d 813, 817; M.J. Farms, Ltd. v. Exxon Mobil Corp., 07-2371, p. 13 (La.7/1/08), 998 So.2d 16, 27. It is well established that the starting point for the interpretation of any statute is the language of the statute itself. Foti, 09-0093 at p. 6, 27 So.3d at 817; Dejoie v. Medley, 08-2223, P. 6 (La.5/5/09), 9 So.3d 826, 829. When a statute is clear and unambiguous and its application does not lead to absurd consequences, the provision is applied as written with no further interpretation made in search of the Legislature's intent. Foti, 09-0093 at p. 6, 27 So.3d at 817; LSA-C.C. art. 9; LSA-R.S. 1:4. In the event the language of a statute is susceptible of different meanings, the interpretation must best conform to the purpose of the law. LSA-C.C. art. 10.
When analyzing legislative history, it is presumed the legislature's actions in crafting a law were knowing and intentional. Foti, 09-0093 at p. 6, 27 So.3d at 817; M.J. Farms, Ltd., 07-2371 at pp. 13-14, 998 So.2d at 27. More particularly, the legislature is presumed to enact each statute with deliberation and with full knowledge of all existing laws on the same subject. Thus, legislative language will be interpreted on the assumption the legislature was aware of existing statutes, well established principles of statutory construction and with knowledge of the effect of their acts and a purpose in view. M.J. Farms, Ltd., 07-2371 at pp. 13-14, 998 So.2d at 27.

DISCUSSION
In the case sub judice, plaintiff argues that LSA-R.S. 17:45 is clear. Plaintiff asserts that Mrs. Hays was demoted due to the reduction in her salary, and she was therefore entitled to a hearing in accordance with the statute. Because Mrs. Hays was not given a hearing, plaintiff argues that her tenure rights were violated. Plaintiff argues that these statutorily protected tenure rights must take precedence over any reduction in force procedure. BESE maintains that Mrs. Hays was not removed from her position for willful neglect of duty, incompetency, or dishonesty, so the provisions of the tenure law are inapplicable.
The facts in this matter were essentially undisputed, and the trial court stated that the question it was to decide was whether the teacher tenure law for special schools, LSA-R.S. 17:45, or the RIF law, LSA-R.S. 17:81.4, applied. The court made the determination that there was no termination, demotion, or action taken for cause as defined under LSA-R.S. 17:45. The court found that plaintiff's position was eliminated due to a reduction in enrollment and budget cuts. Based on those facts, the court concluded that the tenure law was not controlling and there was no need for a tenure hearing since BESE did not allege or contend in any way that plaintiff "was in any way deficient." Rather, the trial court found LSA-R.S. 17:81.4 controlling. The court also stated that to accept plaintiff's argument would mean that it would have to completely ignore the reduction in work force statute and the reason that it was enacted. The court stated:
And I really kind of question under these facts whether or not this constitutes a demotion as claimed by plaintiff, and the reason I do that is it almost can't be a demotion since the position she occupied no longer exists. And this is not a situation where she's dropped down from principal to teacher, someone else comes in and occupies this former principal position. It no longer exists. And, again, it wasn't a demotion for cause, rather, only because of the reduction in force, that these certain positions were being eliminated. And, again, as I read ... and consider plaintiff's argument, it seems that ... BESE would *824 have been better suited simply to terminate the position as principal and thank Ms. Hays for her years of service. But by choosing to keep her and complying with the statute that says we're going to put you in this position, we're going to look at your years of experience, and based on thatI mean, she's not put at a first year teacher's position. She was way up on the pay schedule. That it just wouldn't make sense to say they're better off terminating her than trying to find a spot to place her in as a teachered [sic] employee. And that's clearly not what, I think, 17:81.4 would require.
The trial court stated that the only way to give a common-sense meaning to the statutes at issue, and give LSA-R.S. 17:81.4 any kind of meaning, was to find the reduction in force statute controlling. Finding that BESE and the school board acted in compliance with the RIF statute and procedures, the trial court dismissed plaintiff's suit.
We agree. Plaintiff was not removed from office. Rather, her position was eliminated. There were no "written and signed charges of willful neglect of duty, or incompetency, or dishonesty." By the plain language of the statute, the provisions of LSA-R.S. 17:45 regarding the removal of a tenured teacher in a special school are not applicable in this matter. Further, a statute must be applied and interpreted in a manner that is logical and consistent with the presumed purpose and intent of the legislature. SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695, pp. 11-12 (La.6/29/01), 808 So.2d 294, 302. Thus, we must interpret the RIF statute under the assumption that the legislature was aware of the tenure law at the time LSA-R.S. 17:81.4 was passed. See M.J. Farms, Ltd., 07-2371 at pp. 13-14, 998 So.2d at 27. Additionally, we note that pursuant to the RIF statute, an employee has the right to request in writing a review of an action resulting from implementation of a RIF and to pursue the matter through the school board's adopted grievance procedure. LSA-R.S. 17:81.4 D(5). We conclude that the trial court was correct in finding the RIF statute controlling.
Accordingly, upon our de novo review of the record, the trial court properly denied the motion for summary judgment filed by plaintiff, granted BESE's motion for summary judgment, and dismissed plaintiffs suit.

CONCLUSION
The judgment of the trial court is affirmed. All costs of this appeal are assessed to the plaintiff-appellant.
AFFIRMED.
GAIDRY, J. dissents with reasons.
GAIDRY, J., dissenting.
BESE maintains that La. R.S. 17:81.4 does not conflict with the provisions of the statute governing tenure for special school teachers, La. R.S. 17:45, but rather that it controls the specific situation presented, as a special and later-enacted statute. I disagree with BESE's interpretation of the statutes at issue. Under the particular facts of this case, the statutes must be reconciled by giving controlling weight to and liberally construing the beneficial provisions of La. R.S. 17:45. The change in Mrs. Hays's employment position should not have resulted in a reduction in her salary as a tenured special school teacher, despite the fact that she was no longer a principal. The majority is in error. I must respectfully dissent.

Principles of Statutory Interpretation
Legislative intent is the fundamental question in all cases of statutory interpretation, and rules of statutory construction are designed to ascertain and enforce the *825 intent of the statute. State v. Campbell, 03-3035, p. 7 (La.7/6/04), 877 So.2d 112, 117. It is presumed that the legislature enacts each statute with deliberation and with full knowledge of all existing laws on the same subject. Id., 03-3035 at p. 8, 877 So.2d at 117. It is further presumed that the legislature intends to achieve a consistent body of law. Id.
It is a fundamental rule of statutory construction that when two statutes deal with the same subject matter, the statute specifically directed to the matter at issue must prevail as an exception to the more general statute. Fontenot v. Reddell Vidrine Water Dist., 02-0439, 02-0442, 02-0478, p. 20 (La.1/14/03), 836 So.2d 14, 28. The parties here, however, are in disagreement as to which of the purported conflicting statutes is the general, and which is the specific.
The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting it. Pumphrey v. City of New Orleans, 05-979, p. 11 (La.4/4/06), 925 So.2d 1202, 1210.[1] Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided. Id. It is presumed that every word, sentence, or provision in the law was intended to serve some useful purpose, that some effect is to be given each such provision, and that no unnecessary words or provisions were used. Lasyone v. Phares, 01-1785, p. 4 (La.App. 1st Cir.5/22/02), 818 So.2d 1068, 1071, writ denied, 02-1711 (La. 10/14/02), 827 So.2d 423.

Promotions Under the Teacher Tenure Law
The purpose of the Teacher Tenure Law is to ensure teachers with security in the position, grade, or status they have attained, and not merely to ensure them with teaching employment. Rousselle v. Plaquemines Parish Sch. Bd., 93-1916 (La.2/28/94), 633 So.2d 1235, 1242. The provisions of the Teacher Tenure Law must be liberally construed in favor of teachers, since teachers are its intended beneficiaries. Palmer v. La. State Bd. of Elementary & Secondary Educ., 02-2043, p. 8 (La.4/9/03), 842 So.2d 363, 369.
Louisiana Revised Statutes 17:444 addresses the rights of tenured teachers relative to promotion and demotion in the regular public school system. As provided in the statute, a teacher is "promoted" by being moved "from a position of lower salary to one of higher salary," or by being moved to "a higher position." Courts have generally held that the terms "higher salary" and "higher position" are synonymous for purposes of determining if a change in employment constitutes a promotion. See Smith v. Ouachita Parish Sch. Bd., 29,873, pp. 5-6 (La.App. 2nd Cir.9/24/97), 702 So.2d 727, 731, writ denied, 97-2721 (La.1/16/98), 706 So.2d 978, and Pasqua v. Lafourche Parish Sch. Bd., 408 So.2d 438, 441 (La.App. 1st Cir.1981). A demotion would of course involve an opposite change in employment to one of lower salary or position. Louisiana courts have therefore consistently defined demotion for purposes of La. R.S. 17:444 as a change from a position of higher salary to a position of lower salary. See Mouras v. Jefferson Parish Sch. Bd., 300 So.2d 540, 541-42 *826 (La.App. 4th Cir.), writ denied, 302 So.2d 619 (La.1974).
In Dugas v. Ascension Parish Sch. Bd., 228 La. 80, 86, 81 So.2d 817, 819 (La.1955), the supreme court observed that "the doctrine that a permanent teacher may be deprived of tenure by bona fide abolition of the position he holds has not been recognized in Louisiana." Interpreting the Teacher Tenure Law as then worded, the court explained:
[W]hereas a school board has the unquestioned right to abolish in good faith a position occupied by a permanent teacher, it cannot thereby deprive the teacher of his previously acquired status and its accompanying emoluments. [Citations omitted.] An honest discontinuance of his office does not automatically remove a permanent teacher from the school system. He remains therein and should forthwith be placed in a position of standing equal to that formerly held, if it be possible. In any event, he is nonetheless entitled to the salary attributable to the status he has attained even though he be reemployed in a position of lesser rank. [Citation omitted.]
Id., 228 La. at 87, 81 So.2d at 819. (Emphasis added.) See also Long v. Lafourche Parish Sch. Bd., 460 So.2d 651, 654 (La. App. 1st Cir.1984).
By Acts 1985, No. 988, § 1, the legislature amended La. R.S. 17:444 to eliminate the acquisition of tenure for promotions occurring after August 1, 1985, making such positions subject to contract. La. R.S. 17:444(B)(5); Rousselle, 93-1916, 633 So.2d at 1242. If the promoted teacher's contract in the higher position is not renewed, the teacher is entitled to return to his former teaching position or a position paying the same salary as the former position. Id., 93-1916, 633 So.2d at 1243. However, those teachers promoted prior to July 1, 1985 retain their rights to tenure in the promoted positions.
As the supreme court noted in Rousselle, the 1985 amendment enacting La. R.S. 17:444(B) was "an attempt to solve the recurring problem of the elimination or discontinuation of promotional positions [and] of the consolidation or demolitions of schools for economic reasons." Id., 93-1916, 633 So.2d at 1242. I emphasize that such economic reasons are for the most part the same reasons that may necessitate a RIF. Additionally, the statute currently recognizes that a teacher promoted after August 1, 1985 may not be offered renewal of his contract in the promoted position if "the position has been discontinued, or ... eliminated as a result of district reorganization." La. R.S. 17:444(B)(4)(c)(iv). Significantly, however, La. R.S. 17:45, applicable to teachers in the special schools, does not contain similar language.

Teacher Tenure in the Special Schools
Louisiana Revised Statutes 17:45 was originally enacted in 1979 for the purpose of providing tenure to teachers within the special school system, with the same rights and privileges afforded regular public school teachers under La. R.S. 17:442, et seq. La. R.S. 17:43; Palmer, 02-2043, pp. 8-9, 842 So.2d at 369. As subsequently amended, La. R.S. 17:45 provides, in pertinent part:
A. ... A teacher [in a special school] shall be entitled to tenure benefits as follows:
(1)(a) Each teacher shall serve a probationary term of three contract years...
(b) ... [I]n the absence of [notification of discharge or dismissal], such probationary teacher shall automatically become a regular and permanent teacher in the employ of the special school *827 where he has successfully served his three year probationary term....
(2)(a) A permanent teacher in a special school shall not be removed from office except upon written and signed charges of wilful neglect of duty, or incompetency, or dishonesty, and then only if found guilty after a hearing by the board or by a committee of the board ...
. . .
(3)(a) Whenever a teacher who has acquired permanent status, as set forth in this Section, in a special school is promoted from a position of lower salary or status in such special school to a position of higher status or salary, such teacher shall serve a probationary period of three years in the higher position before acquiring permanent status therein, but shall retain the permanent status acquired in the position of lower status or salary from which he or she was promoted.
(b) During the probationary period in the position to which promoted, a teacher shall not be disciplined, removed, or demoted to the lower position from which he was promoted except in compliance with the provisions of Subsection A(l) of this Section. At the expiration of the probationary period in the higher position, a teacher, unless removed or demoted in accordance with Subsection A(1) of this Section, shall automatically acquire permanent status in the higher position and thereafter may not be disciplined, removed, or demoted from such higher position [except] in compliance with the provisions of Subsection A(2) of this Section.

. . .
(4) The provisions of Paragraph (3) of this Subsection shall apply only to those whose promotion to a position of higher salary or status, as provided in Paragraph (3), occurred prior to July 1, 2003.

B. (1) Whenever a teacher who has acquired permanent status in a special school, as provided in this Section, is promoted from a position of lower salary or status to one of higher salary or status, such teacher shall not gain permanent status in the position to which he is promoted but shall retain permanent status acquired as a teacher.
. . .
C. Nothing contained in the Louisiana Revised Statutes of 1950 shall be construed as conferring upon the board the authority to make rules and regulations which may impair or nullify the provisions of this Subpart and Section.

(Emphasis added.)
The language of this statute parallels that of La. R.S. 17:442-44, applicable to regular public school teachers. However, when La. R.S. 17:444 was amended in 1985 to eliminate future acquisition of tenure in positions higher than that of teachers, such as principal positions, no corresponding change was made to La. R.S. 17:45. Such a change was not made until July 1, 2003, when Acts 2003, No. 92, § 1 enacted the present language of La. R.S. 17:45(A)(3) and (B), and the elimination of tenure for promoted positions was prospective only, for promotions occurring on or after the amendment's effective date. Mrs. Hays was promoted to the position of principal of NDC in July 1992. Thus, La. R.S. 17:45(A)(3), rather than La. R.S. 17:45(B)(1), is applicable to the issue of her right to tenure in that position.
A "promotion" for purposes of La. R.S. 17:45(A)(3)(a) and (B)(1) by definition entails a change in employment "from a position of lower salary or status to one of higher salary or status." [Emphasis added.] While the quoted language differs *828 slightly from that of La. R.S. 17:444 addressing promotion, the legal definitions of "promotion" and "demotion" for purposes of La. R.S. 17:45 are essentially the same as those for purposes of La. R.S. 17:443 and 444. This court has previously held that a reduction in salary constitutes a demotion within the meaning of La. R.S. 17:45(A)(3). See Pizzolato v. State ex rel. Bd. of Elementary & Secondary Educ., 452 So.2d 264, 267 (La.App. 1st Cir.1984), and Sims v. State Bd. of Elementary & Secondary Educ., 00-0056, p. 9 (La.App. 1st Cir.2/16/01)(unpublished opinion).

The Reduction in Force (RIF) Statute
Louisiana Revised Statutes 17:81.4, specifically requiring published rules relating to "reductions in force," was first enacted in 1983, after the enactment of La. R.S. 17:45. Subsection (D) requires that "[t]enure of employees" be included among the "minimum standards" established by city and parish school boards and by "special schools" (including the SSD, through BESE), but does not specify the content of such standards. While it is obvious that tenure is a qualification entitling an employee to preferential treatment in the event a RIF is instituted, the statute is silent regarding the effect of a RIF on tenure in a promoted position. While the statute recognizes the authority and discretion of a school boards in implementing a RIF, the statutory reference to tenure necessarily incorporates by reference the protective parameters and restraints of the Teacher Tenure Law. Thus, in the case of the SSD, any RIF policy must implicitly comport with the provisions of La. R.S. 17:45.
There is limited jurisprudence interpreting La. R.S. 17:81.4. BESE relies upon the case of Burns v. Monroe City Sch. Bd., 577 So.2d 1205, 1208-09 (La.App. 2nd Cir.), writs denied, 581 So.2d 683, 686 (La.1991), in support of its position that the RIF statute is controlling here, and effectively preempts the tenure provisions of La. R.S. 17:45(A)(3). I disagree, and find Burns clearly distinguishable. In the first place, Burns did not involve a promoted teacher in a special school, nor did it address the express provisions of La. R.S. 17:45(A)(3). Secondly, it involved an improper demotion of a supervisor made under the guise of contract nonrenewal, contrary to a RIF policy that actually controlled the situation and dictated the supervisor's retention over that of an uncertified supervisor. Additionally, the promoted position was a contract position under La. R.S. 17:444(B), not a tenured position, as the supervisor was promoted after August 1, 1985. Burns simply does not stand for the broad assertion put forth by BESE.
BESE contends that Section 111 of the manual's RIF policy, adopted pursuant to La. R.S. 17:81.4, is dispositive of the factual situation presented here.[2] Where the legislature has delegated to an administrative agency certain administrative or ministerial authority, the regulations promulgated by the agency may not exceed the authorization delegated by the legislature. State v. Domangue, 93-1953, p. 5 (La.App. 1st Cir.12/22/94), 649 So.2d 1034, 1038. See also La. R.S. 17:45(C). Section 111 cannot supersede the provisions of positive law set forth in La. R.S. 17:45.
BESE essentially contends that Mrs. Hays was not actually demoted, because *829 the change in her employment position was made pursuant to the SSD RIF plan, and not for any of the three reasons for disciplinary demotion set forth in La. R.S. 17:45(A)(2). In that regard, it cites Nicholson v. St. John the Baptist Parish Sch. Bd., 97-846, pp. 3-4 (La.App. 5th Cir.1/14/98), 707 So.2d 94, 95, for the proposition that a tenure hearing under La. R.S. 17:443 or the corresponding language of La. R.S. 17:45(A)(2) is only required in cases of disciplinary dismissal or demotion. I disagree. While I agree that the hearing contemplated under La. R.S. 17:45(A)(2) is intended to provide due process in cases of disciplinary dismissal or demotion, this begs the question as to the threshold issue of BESE's lack of authority under La. R.S. 17:45(A)(3) to demote Mrs. Hays to a position of lower salary. Nothing in the language of La. R.S. 17:81.4 suggests that the accepted definition of demotion for purposes of tenure under either La. R.S. 17:444 or La. R.S. 17:45 was implicitly modified or repealed, so as to exclude from that definition a change to a lower position due to a RIF plan or policy. As a matter of law, the change in Mrs. Hays's position to one of lower salary constituted a demotion. Further, the 1985 amendment to La. R.S. 17:444 and the 2003 amendment to La. R.S. 17:45, both enacted subsequent to La. R.S. 17:81.4, suggest that the legislature intended to shield those tenured teachers promoted prior to the amendments' effective dates from that effect of a RIF plan or policy.
Louisiana Revised Statutes 17:45(A)(3) constitutes a special law applicable to tenured special school teachers promoted prior to July 1, 2003 to higher positions. Further, as that particular provision was enacted subsequent to the original enactment and the subsequent amendments of La. R.S. 17:81.4, it must be presumed that the legislature's failure to include language authorizing a reduction in pay for such tenured special school principals and other supervisory employees in the event of a RIF was intentional. The express language of La. R.S. 17:45(A)(3) limits the causes for demotion of such employees to those enumerated in Subsection (A)(2), and Subsection (C) expressly precludes the adoption of any rule or regulation by BESE that might impair or nullify the statute's provisions. Interpreting the statute's provisions liberally in favor of teachers' tenure rights, as we are required to do, the inescapable conclusion is that BESE has no authority to adopt any rule or regulation in contravention of La. R.S. 17:45(A)(3) and that Section 111 of BESE's RIF policy is inapplicable to special school teachers promoted prior to July 1, 2003.[3] Thus, as Mrs. Hays's demotion did not comply with La. R.S. 17:45(A)(3)'s explicit terms and deprived her of a vested property right in contravention of law, it had no legal effect. See Palone v. Jefferson Parish Sch. Bd., 306 So.2d 679, 682 (La.1975). The trial court's judgment was incorrect under the facts and applicable statutory language.
It is quite true, as the majority notes, that the Teacher Tenure Law was not intended to guarantee job security where there are no jobs. But such was not the situation in Mrs. Hays's case; she was offered and accepted an available job in the SSD. Because she was promoted prior to July 1, 2003, she was clearly entitled to the benefit of the protection against reduction *830 in her salary provided by the unambiguous language of La. R.S. 17:45(A)(3). The judgment of the trial court should be reversed, and summary judgment should be rendered in favor of the plaintiff-appellant, Ray Hays, and against the defendant-appellee, the Louisiana State Board of Elementary and Secondary Education, declaring that Susan Ann Smith Hays was improperly demoted, and awarding the plaintiff-appellant the accrued difference between Susan Ann Smith Hays's prior salary of $73,926.96 and her salary of $64,383.09 as of July 1, 2004 and thereafter, and all emoluments relating thereto.
For the foregoing reasons, I dissent.
NOTES
[1] The word "except" was obviously intended to be placed before the phrase "in compliance with," but was inadvertently omitted. See LSA-R.S. 17:444 A(2). Otherwise, if the language of LSA-R.S. 17:45 A(3) is read literally, a promoted permanent teacher in a special school could never be removed or disciplined under Subsection A(2) for "wilful neglect of duty, or incompetency, or dishonesty." Such an interpretation would, of course, be absurd.
[1] Laws on the same subject matter must be interpreted in reference to each other. La. C.C.art. 13.
[2] Section 111 provides:

An employee reassigned to a different job title shall be placed on the appropriate salary schedule at the step for which the employee is qualified. An employee accepting assignment to a lesser position will be placed within the salary schedule for the lesser position, at the level appropriate to the employee's years of experience and education.
[3] In reaching this conclusion, I agree that the record supports the conclusion that the RIF plan at issue was undertaken in good faith and for valid reasons. Nevertheless, because the language of La. R.S. 17:45 is clear and unambiguous and directly addresses the situation at issue, its plain language cannot properly be disregarded under the pretext of following its spirit or the perceived spirit of La. R.S. 17:81.4.