McDONALD, J.
| ¡.This is an appeal of a partial summary judgment. On October 14, 2009, Texans Credit Union (TCU) filed suit against Louisiana State Cypress, L.L.C. (Cypress), the Louisiana Department of Agriculture and Forestry (the Department), the Louisiana State Market Commission (the State Market Commission), and the Louisiana Agricultural Finance Authority (the Agricultural Finance Authority), which was the successor to the State Market Commission. (Collectively, the Department and the Agricultural Finance Authority are sometimes referred to as the State defendants.)
TCU was seeking to enforce its rights against Cypress, which had borrowed $3,150,000.00 from TCU in June of 2007. The TCU loan was a refinancing of an existing loan made to Cypress from Capital One Bank (Capital One, formerly known as Hibernia National Bank). The Capital One loan was secured by all of Cypress’s immovable and movable property, guarantees by two of Cypress’s members and a guarantee by the State Market Commission pursuant to the Louisiana Agricultural Products Processing Development Law, La. R.S. 3:446.1-446.7,[1] (the Products Processing Development Law).
When the loan was refinanced, the State Market Commission transferred its Products Processing Development Law guarantee to the TCU loan, and Capital One assigned its security interest in Cypress’s assets and the member guarantees to the State Market Commission to serve as collateral for the State Market Commission in the event it was called upon to honor its guarantee to TCU. Thus, the only collateral for the TCU loan was the State Market Commission’s guarantee to TCU under *871 the Products Processing Development Law.
| oBefore the loan from TCU was confect-ed, TCU received a copy of a written legal opinion from the Department’s general counsel, J. Marvin Montgomery, dated June 13, 2007, and addressed to the State Market Commission director, Randy Rogers, stating that the State Market Commission guarantee was authorized, was legal, and did not require the approval of any other governmental body.
After Cypress failed to make scheduled principal and interest payments to TCU in June of 2009, TCU made demands upon Cypress and the State Market Commission to honor their obligations under the loan and the guarantee. The State Market Commission rejected the demand, contending that the guarantee was unenforceable because it had not been approved by the Louisiana State Bond Commission (the State Bond Commission.)
TCU asserted that it had reasonably relied upon the Department’s general counsel’s legal opinion in agreeing to make the loan and to accept the guarantee as collateral. TCU prayed that judgment be rendered in its favor and against the State defendants, declaring that Cypress and the State Market Commission were in default of their obligations under the TCU loan documents, and ordering the defendants to pay TCU all principal, interest, default interest, and late fees due under the Cypress note, along with reasonable attorney fees and collection costs, and any other relief to which TCU was entitled.
In its answer, the Department and the Agricultural Finance Authority asserted that pursuant to La. R.S. S9:1405(B), the State Market Commission was required to obtain the approval of the State Bond Commission prior to guaranteeing the debts of others; thus, the State Market Commission guarantee was void ab initio, unenforceable, and contrary to public policy. Further, the Department and the Agricultural Finance Authority demanded that TCU provide strict proof of the requisite elements of detrimental reliance and the change in |4TCU’s position due to such reliance. The Department and the Agricultural Finance Authority asked that the suit be dismissed with prejudice. The Department and the Agricultural Finance Authority also filed a peremptory exception of no cause of action, asking that the suit be dismissed with prejudice, because it failed to state a cause of action since the guarantee that TCU relied upon to enforce the debt was void ab initio, unenforceable, and contrary to public policy.
Thereafter, TCU filed a motion for partial summary judgment against the defendants, asserting that there were no factual disputes that were material to the State Market Commission’s liability to TCU under the guarantee. TCU asserted that the State defendants did not dispute that the guarantee was given, or that the loan was in default, and that the only issue was a question of law as to whether the guarantee agreed to by the State Market Commission was valid and enforceable without being approved by the State Bond Commission. TCU asserted that the Products Processing Development Law did not require that a loan guarantee by the State Market Commission be approved by the State Bond Commission; thus, it was entitled to a judgment as a matter of law against the State defendants for all amounts due under the defaulted promissory note that was guaranteed by the Commission pursuant to the Products Processing Development Law. TCU attached to its motion Louisiana Attorney General Opinion 08-0258, addressed to Craig Gan-nuch, Assistant Commissioner of the Department, which found that “[t]he State Market Commission must seek State Bond *872 Commission approval before guaranteeing debts of others but not before making loans as authorized by [3:446.4(A) ].”
After a hearing, the district court denied the peremptory exception of no cause of action filed by the Department and the Agricultural Finance Authority, granted the motion for partial summary judgment by TCU, and found that the State Market Commission was not required to obtain the approval of the State Bond [ ^Commission prior to making a loan guarantee in favor of TCU. The district court certified that the judgment was a partial final judgment pursuant to La. C.C.P. art. 1915(B)(1). The Department and the Agricultural Finance Authority are appealing that judgment.
The only issue on appeal is whether the district court erred in granting a motion for partial summary judgment in favor of TCU and ruling that TCU could enforce a guarantee agreement against the State defendants that was entered into by the State Market Commission without prior approval by the State Bond Commission.
Summary judgment is subject to de novo review on appeal, using the same standards applicable to the trial court’s determination of the issues. The summary judgment procedure is expressly favored in the law, and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. La. C.C.P. art. 966 A(2). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. Hays v. Louisiana State Board of Elementary and Secondary Education, 09-1386, p. 4 (La.App. 1 Cir. 6/11/10), 39 So.3d 818, 820, writ denied, 10-1640 (La.10/8/10), 46 So.3d 1272.
In a case involving no dispute regarding material facts, but only the determination of a legal issue, a reviewing court must also apply the de novo standard of review, under which the trial court’s legal conclusions are not entitled to deference. Hays, Id.
Legislation is the solemn expression of legislative will. La. C.C. art. 2. Therefore, the interpretation of a law involves primarily the search for the legislature’s intent. We have consistently held that the starting point in interpreting | fiany statute is the language of the statute itself. Landry v. Louisiana Citizens Property Insurance Company, 07-1907, 07-1908, p. 20 (La.5/21/08), 983 So.2d 66, 79.
The purpose of the Products Processing Development Law was to “develop and enhance the capacity to process agricultural products in Louisiana including providing financial assistance to any person who owns, leases, or operates, or is seeking to own, lease, or operate an agricultural plant in this state, as the state’s participation in cooperative endeavors involving the State Market Commission and any qualified applicant.” La. R.S. 3:446.1.
One charge of the State Market Commission was to foster this development and enhancement by “participating in cooperative endeavors involving loans and loan guarantees to private business enterprises.” La. R.S. 3:446.3(E). The Products Processing Development Law did not provide that any financial obligation incurred by the Department be authorized by the State Bond Commission. Further, there is no reference of any type to the State Bond Commission in the Products Processing Development Law. La. R.S. 3:446.1-446.7.
Rather, the Products Processing Development Law contained its own set of internal guidelines for guaranteeing loans and taking on obligations in that “[e]ach coop *873 erative endeavor and each contract entered into by the commission shall be subject to review by the legislative auditor.” La. R.S. 3:446.5(F). Annual reports were required to be given by the State Market Commission to the House and Senate Committees on Agriculture, the House Committee on Appropriations, and the Senate Committee on Finance. La. R.S. 3:446.5(G). In addition, the activities of the State Market Commission under the Products Processing Development Law were to be periodically reviewed and examined by the commissioner of financial institutions. La. R.S. 3:446.5(H).
[7The initial legislative grant of authority to the State Market Commission in 1944 to make loans and loan guarantees included an express requirement that the State Market Commission obtain prior approval and consent of the Board of Liquidation of State Debt (the predecessor to the State Bond Commission.) Acts 1944, No. 113. This requirement was carried over into former La. R.S. 3:411. That requirement, however, was eliminated in 1978 by Acts 1978, No. 242, § 1, and it has never been reinstated.
The only limitations thereafter imposed on the State Market Commission’s ability to make loans and loan guarantees was found in former La. R.S. 3:446.5A, which provided the terms under which loans and loan guarantees may be made, and La. R.S. 3:446.5 B, which provides an aggregate limit on outstanding loan and loan guarantees of twenty million dollars at any one time. Further, La. R.S. 3:446.5 D and E provide for certain prohibited transactions.
The legislature is presumed to have enacted an article or statute in light of the preceding law involving the same subject matter and court decisions construing those articles or statutes. La. R.S. 24:177 C. Where the new article or statute is worded differently from the preceding article or statute, the legislature is presumed to have intended to change the law. La.R.S. 24:177 C; Brown v. Texas-LA Cartage, Inc., 98-1063, p. 7 (La.12/1/98), 721 So.2d 885, 889.
Herein, the plain, unambiguous language of the Products Processing Development Law does not require the Bond Commission to approve loan guarantees by the State Market Commission. Further, the legislature is presumed to have intended to change the law so that the State Bond Commission was not required to approve loan guarantees made by the State Market Commission.
Thus, we find that the district court was correct in finding that the State Market Commission was not required to obtain the approval of the State Bond Commission prior to making the particular loan guarantee at issue in favor of TCU.
^Accordingly, after our de novo review of the record, we find that the district court properly denied the peremptory exception of no cause of action filed by the Louisiana Department of Agriculture and Forestry and the Louisiana Agricultural Finance Authority and properly awarded partial summary judgment in favor of Texans Credit Union and against the Louisiana Department of Agriculture and Forestry and the Louisiana Agricultural Finance Authority. That district court judgment, dated May 13, 2010, is affirmed.
Costs in the amount of $1,432.50 are assessed one-half each against the Louisiana Department of Agriculture and Forestry and the Louisiana Agricultural Finance Authority.
AFFIRMED.

. Louisiana Revised Statutes 3:446.1 to 446.7 were repealed by Acts 2009. No. 24 § 7, effective June 12, 2009.